## HYDE v. MINNESOTA, D. & P. RY. CO.

Failure of the court to find or to submit to the jury, in a proper case, a material issue arising at the trial is reversible error.

A court of equity, in the proper case, will enjoin a threatened trespass or injury, consisting of the taking of private property for public use, without just compensation.

Under Const. art. 6, § 13, providing that private property shall not be taken for public use, or damaged, without just compensation, which shall be paid as soon as it can be ascertained, and before possession is taken, it is presumed that damages occasioned by the taking and appropriation of the property are capable of ascertainment and compensation in a court of law, in view of the fact that the law provides for such assessment.

Under Const. art. 6, § 13, providing that private property shall not be taken for public use without just compensation, as determined by a jury, only a single action or assessment and payment of damages is contemplated.

Civ. Code, § 2284, provides that as a general rule compensation is a relief or a remedy provided by law for violation of private rights, etc., and specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code. Section 2359 provides that preventive relief is granted by injunction, provisional, or final. Section 2361 provides that an injunction may be granted to prevent the breach of an obligation existing in favor of the applicant, (1) where pecuniary compensation would not afford adequate relief, (2) where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and (3) where the restraint is necessary to prevent a multiplicity of judicial proceedings. **Held,** that such sections do not authorize enjoining a railroad company from the operation of a road on its own property until payment of the damages to other property in the neighborhood.

Where the power of eminent domain has been delegated to public officers or others who are threatening to make a permanent appropriation of private property to public uses, in excess of the power granted, or without complying with the conditions on which the right to make the appropriation is given, a court of equity will prevent the threatened wrong without regard to the question of the irreparable damages, or the existence of legal remedies which may afford a money compensation.

The constitutional requirement that damages must first be ascertained and just compensation made before private property is taken for public use has no application to the use by a private owner of his own property, but applies only to those cases where it is necessary to acquire the right to use and occupy property through the exercise of the power of eminent domain.

Injunction will not lie to restrain a railroad from making improvements on its own property without first proceeding, by condemnation action, to assess and pay consequential damages, when such damages are already accrued, and a plain, speedy, and adequate remedy exists in an action at law.

(Opinion filed, Dec. 15, 1909.)

Appeal from Circuit Court, Brown County.   Hon. J. H. McCoy, Judge.

Action by Charles L. Hyde against the Minnesota, Dakota & Pacific Railway Company.   Judgment for defendant, and plaintiff appeals.   Affirmed.

*Taubman, Williamson & Herrid,* for appellant.

Whenever a proposed public use causes to propery, no part of which is taken, an injury of such character as if it accrued when a portion of the property was taken would be a proper element of damages to the part not taken, there is a damage within the scope and protection of the constitutional provision entitling the owner to compensation.   Omaha R. R. Co. v. Cable Co. 32 Fed. 727. If the property is diminished in actual value by reason of a public improvement, it is to the extent of the diminution taken for public use as much as if it was directly appropriated. Searle v. City of Lead, 10 S. D. 312; Smith v. St. P. M. & M. Ry. Co., 81 Pac. 840; B. & P. R. Co. v. First Baptist Church (U. S.) 27 L. Ed. 739; Cogswell v. N. Y. & N. R. Co., 103 N. Y. 10; Lake Erie & Western R. R. Co. v. Scott, 8 L. R. A. 330; McElroy v. Kansas City, 21 Fed. 257.   Under the provisions of the constitution in this state, Article VI, Sec. 13, and Article

XVII, Sec. 18, and the statutes of the state, section 863, Code of Civil Procedure, the plaintiff is secured in his property rights until the amount of the damages has been ascertained and paid or tendered as provided by the statute, and, until this is done, he is entitled to remedy by injunction to prevent the taking or injuring of his property. Donovan v. Allert (N. D.) 91 N. W. 144; Searles v. City of Lead, 10 S. D. 312.

    *Campbell & Taylor* and *Geo. W. Severs,* for respondent.

    Under a constitution providing that no private property shall be taken or damaged for public use without just compensation, a property owner may not recover damages against a railroad for excavating through and obstructing cross streets which are not his property, and which he uses in common with the general public, although to a greater extent than other members of the public, but which are not adjacant to such property. Smith v. St. Paul, M. & M. Ry. Co. 81 Pac. 840; Cram v. Laconia, 57 L. R. A. 282; Davis v. Hampshire County, 11 L. R. A. 750, Buhl v. Fort St. Union Depot Co., 57 N. W. 829; East St. Louis v. O'Flynn, 119 Ill. 204; McGee's Appeal, 114 Pa. St. 447; Penn. Ry. Co. v. Lipincott, 116 Pa. 472; Austin v. Augusta, &c., 108 Ga. 671; Vandorvere v. Kansas City, 107 Mo. 83; Brown v. Board of Supervisors, 124 Cal. 274; Gilbert v. Greely, &c., Co., 13 Colo. 501; Morgan v. Des Moines & St. L. Ry., 21 N. W. 96, Rockette v. C. M. & St. P. Ry. Co., 20 N. W. 140; Carroll v. Wis. Cent. R. R. Co., 41 N. W. 661. To entitle a property owner to compensation for damages caused by a public improvement, he must sustain special injury over and above that suffered by the community in general. And it is not enough that the injury be greater in degree than that suffered by the public generally; it must be in greater kind. Metropolitan Ele. R. R. Co. v. Goll, 100 Ill. App. 323; Van DeVere v. Kansas City, 107 Mo. 83; Gates v. Kansas City Ry. Co., 111 Mo. 28. Owners of lots which abut upon the streets at points distant from the obstruction in question, cannot have relief by injunction, since they sustain no special injury different from that to the public. 1 High on Injunction, Sec. 818; Bulard v. Erhart, 35 Kan. 611; City of Chicago v. Union Bldg. Ass'n, 102 Ill. 379; Dodge v. Penn.

Ry. Co., 43 N. J. Eq. 351; Vanderberg v. City of Minneapolis, 100 N. W. 668.

SMITH, J.  The plaintiff brings this action, invoking the equity powers of the court, to restrain the defendant, the Minnesota, Dakota & Pacific Railway Company "from locating, constructing or operating its railway in said city from the southern limits thereof northerly across Twelfth avenue and thence westerly between Eleventh and Twelfth avenues to the right of way of the Chicago, Milwaukee & St. Paul Railway Company, until the just compensation that should be paid to the plaintiff by reason of the damage to his property aforesaid shall have been determined by a jury in the manner provided by law, and such compensation paid to the said plaintiff."  The complaint alleges that "the defendant railroad corporation is about to and is in the act of con-constructing and locating a railroad, depot grounds, switch yards, coal bins, water tanks, depot and engine house through, upon and over the row of blocks in said city beginning at the southern limits thereof, through blocks 36 and 35 of Thomas' addition to said city, which are next east of Lincoln street, as aforesaid, thence westerly between Eleventh and Twelfth avenues, as aforesaid, to the Chicago, Milwaukee & St. Paul railway right of way, tracks and depot grounds, which are located one block west of and parallel with Fourth street as hereinbefore described. And the said defendant corporation intends to and has taken and appropriated all of said blocks between Eleventh and Twelfth avenues as aforesaid, and block 36 in said Thomas' addition aforesaid, for the purposes aforesaid, and does take and appropriate all of blocks 38, 43, 46, 51, 54, and 59 in Thomas' addition to the said city of Aberdeen," and "that by reason of the construction, location and intended operation of the defendant's railway, switch yards, stock yards, depot, coal bins and water tanks in the location hereinbefore described, the real estate and premises of this plaintiff hereinbefore described, located south of Twelfth avenue, will be greatly damaged and rendered practically valueless to the said plaintiff by reason of the location, construction, and operation of defendant's railway, switch yards, depots, freight houses, coal bins, water tanks and stock yards, immediately north of and

across Twelfth avenue and between the property of the plaintiff and the business and residence portion of said city of Aberdeen and by reason of the noise, dust, smoke, offensive odors, danger of fire and inability to reach the business and residence portion of said city from the said property of this plaintiff without being compelled to cross the tracks and switch yards of the defendant railway corporation." And further alleges that the defendant has taken no steps seeking to exercise the right of eminent domain by assessment of damages or payment of just compensation for such injuries. The answer is a general denial as to the foregoing allegations of the complaint. The issues thus arising were tried to the court, and findings of fact and conclusions of law made and entered, and judgment thereon duly entered denying the relief asked and dismissing the action.

It was admitted on the trial that "no proceedings have been commenced on the part of the defendant to have the damages, if any have been suffered by the plaintiff, assessed in condemnation proceedings as to the property described in the complaint." The court finds, in substance, that the plaintiff is the owner of certain lots in blocks 37, 44, 45, 52 and 53, in Thomas' addition to the city of Aberdeen, being a row of city blocks running east and west along the south line of the city limits; that the defendant railway company owns the entire row of blocks next north across Twelfth street, and running east and west parallel to the row of blocks in which plaintiff's lots are situated; and that the defendant company has constructed its railway tracks, depot, switch yards, and engine house thereon, and that the most southerly of said railway tracks is located 82 feet north of the north line of said Twelfth street and 148 feet distant, at the nearest point, from the plaintiff's property; that none of plaintiff's property is taken, appropriated, or trespassed upon by the improvements made by defendant, or in the operation of its line of railway; and that none of the streets or alleys in said city are appropriated, passed over, or occupied by the railway company at any point where plaintiff's property abuts said streets or alleys. No findings is made by the court on the question of plaintiff's damages. The evidence is wholly undisputed on both sides, and

the question presented for review is whether, on the whole record, the court was in error in refusing the relief sought by the plaintiff.

The first assignment of error is upon the failure of the court to make any finding upon the subject of plaintiff's alleged damages. The plaintiff on the trial introduced evidence tending to show that the building of the railway depot, switch yards, water tanks, round house, coal bins, etc., on the blocks north of plaintiff's property was exceedingly harmful and deterimental, and tended to depreciate its value as residence property, by reason of proximity thereto, and that the noise, smoke, etc., are harmful to such residence property. Also, that his property was rendered less accessible because of the necessary crossing of numerous railway tracks in reaching it from the business and residence portions of the city lying to the north thereof. No objection was made on the trial to the competency of evidence tending to prove the specific class or kind of damages claimed, and that question is not before us. That a failure of the court to find, or to submit to a jury in a proper case, a material issue arising at the trial is reversible error has been settled by this court. Taylor v. Vandenberg, 15 S. D. 480, 90 N. W. 142; McKenna v. Whittaker, 9 S. D. 441, 69 N. W. 587; McPherson v. Swift, 22 S. D. 165, 116 N. W. 79. In the latter case this court says: "It is error for the trial court to refuse or fail to find upon any material issue of fact. * * *. Nevertheless such refusal or failure may not be ground for reversal because not prejudical to any substantial right. When the existence of the omitted finding would not change the ultimate result—as where a complete affirmative defense is established—failure to find some fact essential to the plaintiff's cause of action will not justify a reversal. The law neither does nor requires idle acts. Rev. Civ. Code. 2431."

Appellant's counsel prepared and submitted to the trial court at the proper time requests for findings of fact on the question of plaintiff's damages, and now assigns as error the refusal or failure of the court to make any finding thereon. That such finding was absolutely essential to the plaintiff's alleged cause of action is apparent. It therefore becomes necessary to inquire,

assuming such finding to have been made in plaintiff's favor as requested, whether upon the whole record the plaintiff would have been entitled to the relief demanded in this action. If so, then the failure or refusal of the trial court, to find upon the issue of plaintiff's damages is clearly prejudicial, and reversible error; if not, then such error was not prejudicial to plaintiff's substantial rights, and is not reversible error. The question thus presented upon the record necessarily involves a consideration of section 13, art. 6, of our state Constitution, relating to the right of eminent domain, which is recognized thereby, and the payment of damages as a condition precedent to the exercise of such right, which is found in the Bill of Rights, and reads as follows: "Sec. 13. Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken. No benefit which may accrue to the owner as the result of an improvement made by any private corporation shall be considered in fixing the compensation for property taken or damaged. The fee of land taken for railroad tracks or other highways shall remain in such owners subject to the use for which it is taken." Section 18, art. 17, is found among the provisions of the Constitution, relating to corporations, and by its language seems designed not only to recognize such right, but to make more definite the cases in which damages contemplated thereby may arise. "Sec. 18. Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements which compensation shall be paid or secured before such taking, injury or destruction. The Legislature is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporation or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall, on the demand of either party, be determined by a jury as in other civil cases."

In the view we take of this case it is not necessary to enter

upon a discussion of the various elements of the damages which must be assessed and paid or secured as a condition precedent to the "taking, injury or destruction" or "the taking possession" of private property for such public uses. That a court of equity, in a proper case, will enjoin a threatened trespass or injury of the kind contemplated by these constitutional provisions is too well settled to require a citation of authorities. Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39, L. R. A. 345. That any damages which must be assessed and paid "before possession is taken," whether they be occasioned by the actual taking and appropriation of the property, or are merely consequential in character, are capable of ascertainment and compensation in a court of law, must be presumed, in view of the fact that the law provides for such assessment. This assessment necessarily covers and includes all damages accruing from the construction of the railway, whether they be such as might flow from a continuing trespass and might involve a multiplicity of suits, or are such as result from a direct appropriation of or injury to the property itself. Only a single action, or assessment and payment of damages, is contemplated. And the rule of damages for such injury, being once settled and ascertained, would apply equally whether the question arose in a condemnation proceeding, or in an action at law for the damages after the same have accrued. The record in this case discloses that the defendant railway company is, and at all times since the bringing of this action has been, in the actual possession and occupancy of the property taken and appropriated for the construction and operation of its road and other improvements, and the injuries to this plaintiff's property by reason thereof and for which damages, if any, could be assessed, have already fully accrued. The only injunctive relief therefore, which could be granted this plaintiff, would be an order ousting the defendant company from possession of its property or enjoining and restraining it from operating its railway.

It is true that under section 18, art. 17, individuals and corporations, "invested with the privilege of taking private property for public use," are required to make "just compensation for property taken, injured or destroyed by the construction or en-

largement of their works, highways or improvements, which compensation must be paid or secured before such taking, injury or destruction"; but the mere fact that an individual or corporation may be "invested with that privilege" does not create a new class of persons, nor limit the right of any person to use his own property in the same manner he might use it if not invested with such privilege. It is not the public character of the use to which property owned by individuals or corporations may be put which creates the liability for damages arising under these constitutional provisions. Such public use is merely the condition upon which may be exercised the privilege to "take, injure or destroy private property." Hence the constiutional inhibition extends only to an attempted exercise of the privilege. An individual or a corporation owning property may put it to any lawful use, but will be called upon to respond in damages in a court of law for any use which unlawfully injures others, and, under well-recognized rules of equity in proper cases, may be enjoined from committing such injuries. But the equity jurisdiction thus arising does not flow from the constitutional provisions above referred to.

This action invokes no rule of equity under which preventive relief may be had, and claims no right to equitable relief on any ground, save these constitutional provisions, that possession shall not be taken by one who seeks to exercise the right to take private property for public use, until compensation in damages shall first be made. Such relief is appropriate, and would be granted in all proper cases where there is a threatened invasion of private rights of property. But the Constitution does not change or enlarge in any degree the jurisdiction or powers of courts of equity. Section 2284 of the Civil Code provides: "As a general rule, compensation is the relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code." Section 2359: "Preventive relief is granted by injunction, provisional or final." Section 2361: "Except where otherwise provided by this title, a final injunction may be granted

to prevent the breach of an obligation existing in favor of the applicant: 1. Where pecuniary compensation would not afford adequate relief. 2. Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief. 3. Where the restraint is necessary to prevent a multiplicity of judicial proceedings." That this action does not come within any of these provisions of law defining the cases in which preventive relief by injunction may be given seems too obvious to require discussion.

It is clear that this plaintiff has a plain, speedy, and adequate remedy in an action at law to recover the damages, if any, which have already accrued to his property by the acts of the defendant. He may recover in such action under precisely the same rule of damages which would apply in an assessment of damages in a condemnation proceeding. Such damages as may be thus recovered the law deems adequate compensation, and therefore must be deemed full and adequate relief, and the damages are no more difficult of ascertainment in an action at law than in a proceeding by condemnation. No multiplicity of suits can be involved as a ground of equitable relief, because the damages may be, and must be, determined and fully and finally ascertained in a single action, whether it be in a proceeding by condemnation or in an action at law. "Where the right of recovery depends wholly upon constitutional provisions giving compensation for property damaged or injured, there can be but one recovery. Since the suit is necessarily one for just compensation, once for all, for the injury to the land." Lewis, Eminent Domain, par. 653b; O'Brien v. Penn. S. V. R. R. Co., 119 Pa. 184, 13 Atl. 74; Eachus v. Los Angeles, etc., R. R. Co., 103 Cal. 614, 37 Pac. 750; Atkinson v. Atlanta, 81 Ga. 625, 7 S. E. 692; Smith v. Floyd Co., 85 Ga. 422, 11 S. E. 850; Springer v. Chicago, 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609; Markowitz v. Kansas City, 125 Mo. 485, 28 S. W. 642; Martin v. Chicago, etc., R. R. Co.. 47 Mo. App. 452; Cass v. Pennsylvania Co., 159 Pa. 273, 28 Atl. 161.

In Lewis, Eminent Domain, par. 631, it is said: "It is now almost universally held that an entry upon private property under

color of the eminent domain power will be enjoined until the right to make such entry has been perfected by a full compliance with the Constitution and the laws." Paragraph 632: "The grounds upon which equity takes jurisdiction in such cases are not always plainly defined and differ in different jurisdictions. Perhaps a majority of the cases are put upon the ground of irreparable injury and the consequent lack of an adequate remedy at law. In a few cases the relief has been denied on the ground that the remedy at law was adequate. But in most of these there were other circumstances which rendered it inequitable to grant the relief, while, in many of the cases in which injunctions were granted on the ground of irreparable injury, it was plain enough that the injury could have been readily repaired or fully compensated in money. It seems to us that the jurisdiction of equity in such cases may be placed upon broader grounds; namely, that where the power of eminent domain has been delegated to public officers or others who are threatening to make a permanent appropriation of private property, to public uses, in excess of the power granted or without complying with the conditions upon which the right to make the appropriation is given, a court of equity will prevent the threatened wrong without regard to the question of irreparable damages or the existence of legal remedies which may afford a money compensation. The remedy in equity protects both the owner and those acting under the authority, and is more speedy and efficacious in its operation than the ordinary legal remedies. The Supreme Court of Alabama, in discussing the question, uses the following language: "The prinicple upon which a court of equity proceeds, in interfering to prevent bodies corporate having compulsory powers to enter upon, take and appropriate for their own uses the land of others, differs materially from the principle upon which it intervenes to prevent the commission or continuance of waste, or of nuisances, or of trespasses, when only private rights, or the acts of persons, natural or artificial, not having such powers are involved. In the latter class of cases, if the right be strictly legal, and there is no relation of privity between the parties, it is of the essence of the jurisdiction of the court that a case of irre-

parable injury be shown; a case for which the courts of law do not furnish an adequate remedy. The Constitution not only compels all corporate bodies, public, or private, or all individuals who may be armed with the power of taking private property, but it compels the state and all its agencies and instrumentalities to the duty of first making just compensation to the owner. * * * It is most essential to the preservation of the rights of private property, to the protection of the citizen, and to the preservation of the best interests of the community that all who are invested with the right of eminent domain, with the extraordinary power of depriving persons, natural or artificial, without their consent, of their property, and its possession and enjoyment, should be kept in the strict line of the authority with which they are clothed, and compelled to implicit obedience to the mandates of the Constitution. A court of equity will intervene to keep them within the line of authority, and to compel obedience to the Constitution, because of the necessity that they should be kept within control, and in subjection to the law, rather than upon the theory that they are trespassers, or that the injury which they are inflicting is irreparable. The owner of the land has the right to say that, unless they keep within the strict limits prescribed by the law, they shall not disturb him in the possession and enjoyment of his property. The power is so capable of abuse, and those who are invested with it are often so prone to its arbitrary and oppressive exercise, that a court of equity, without inquiring whether there is irreparable injury or injury not susceptible of adequate redress by legal remedies, will intervene for the protection of the owner.' "

It appears, however, in the case at bar, that the defendant company had acquired title to, and had entered upon possession of, the real property upon which all its works and improvements are placed prior to the commencement of this action. There was no actual taking of any part of plaintiff's property, nor is it shown that any physical injury thereto has actually accrued. None of plaintiff's improvements or works abut upon any street or alley, whereby actual ingress or egress to such property is in any degree obstructed. It further appears that plaintiff's lots

are vacant and unimproved property, and the only injurious effects thereto are those which may affect its value and desirability as residence property by reason of proximity to the railroad and its appurtenant structures. It may be pertinent, also, to observe, that the right to construct railroads and erect improvements necessary and proper for their operation is not conferred by the provisions of the Constitution relating to the exercise of the power of eminent domain. Either corporations or individuals may construct, own, and operate lines of railway without in any single instance finding it necessary to exercise the privilege, given them under the Constitution and the law, to take and appropriate private property for such use. A corporation, by virtue of the powers vested in it by the law of its creation, may purchase and own property necessary for its legitimate uses and purpose, and as such owner assumes the same duties and liabilities as to its use and occupancy as are assumed by a natural person, and no more. This is precisely the situation presented in this case. As disclosed by the record. the defendant company at the time this action was brought, occupied and owned the property on and over which it has built its line of railway and improvements adjacent to the plaintiff's property, and, so far as this plaintiff's rights are concerned, the defendant is, and was then, merely a private owner of private property. As such private owner, the defendant is not shown to have done any act deterimental to plaintiff's property which might be restrained in a court of equity. The requirement of the Constitution that damages must be first ascertained and just compensation made has no application whatever to the use by a private owner of his own property, but has application only to those cases where it is necessary to acquire the right to use and occupy property through the exercise of the power of eminent domain.

The nature of the use to which defendant may devote its own property, places upon it no duty to institute proceedings by condemnation to assess damages. It is true that if a corporation or an individual is threatening to occupy, appropriate, or do actual physical damage to private property against the owner's will, for a use and in a manner which would only be lawful through

an exercise of the right of eminent domain, such act comes within the constitutional inhibition, and may be enjoined by a court of equity on the broader grounds hereinbefore stated. But when such corporation owns its property, and may enter upon and occupy and improve it without becoming in any sense a trespasser, the Constitution does not forbid such acts, and relief by injunction could only be obtained under the same conditions which would warrant such relief between other owners of abutting or adjacent property. This principle has been given much broader application than is necessary on the facts in this case. In the case of Vanderburgh v. City of Minneapolis, 93 Minn. 81, 100 N. W. 669, the city attempted to vacate a street adjacent to plaintiff's lots, and an injunction action was brought to restrain the city in its proceeding, and a railway company owing adjacent property from occupying such street. The court says: "Plaintiff's theory of the case in this respect is that, by the recent amendment to the state Constitution, plaintiff is entitled to damages for the vacation of the streets in question, even though they did not abut upon his property, and that, as no damages were assessed or allowed him by the city council, its action in vacating the streets is null and void, and the railway company may be restrained and enjoined from taking possession thereof. The Constitution, prior to the amendment, provided that private property should not be taken for public use without just compensation therefor first paid or secured. The amended Constitution provides that private property shall not be taken or damaged for public use without compensation. Conceding, with plaintiff, that the vacation of the streets in question damaged his property, and that under the amended Constitution he is entitled to compensation, it does not necessarily follow from that fact alone that he is entitled to an injunction restraining the railway company from taking posession of the vacated streets. If he is entitled to damages, as claimed, he can maintain an action against the railway company to recover the same. It is elementary that an injunction will not lie to restrain the doing of an act where there is a speedy and adequate remedy at law. An action against the company for damages or in ejectment would afford plaintiff full and complete redress,

and if it be conceded, as suggested, that he is entitled to damages in a case of this kind, his remedy is one at law, and not in equity."

We are now called upon to determine what particular damages may be recovered in an action at law or in condemnation proceedings, nor do we hold that only such damages are recoverable, as may result from an actual appropriation of, or actual physical injuries to, property. The question before us is whether we shall enjoin a railway company from making improvements upon its own property without first proceeding, by a condemnation action, to assess and pay consequential damages, when such damages are already accrued, and a plain, speedy, and adequate remedy exists in an action at law. In Searle v. City of Lead, supra, the anticipated damage to plaintiff's freehold was direct and not consequential. It was threatened, and not consummated. It was an injury by a threatened act of the city which necessarily involved an exercise of the right and power of eminent domain, because the city could make the improvement contemplated only by a direct exercise of that power. These considerations disclose the broad distinction between that case and the one at bar. We approve the rule there announced, and are not to be understood as modifying it in any degree, as to the remedy invoked in that case. The question here is only as to the proper use of the remedy by injunction upon the facts before us. The cases of Rigney v. City of Chicago, 102 Ill. 68, and Railroad Co. v. Ayres, 106 Ill. 518, were both actions at law to recover damages under constitutional provisions similar to our own. And while these two cases have no direct bearing on the question before us, it may be noted that relief was there sought in actions at law, and not in equity. But in the case of Rigney v. City of Chicago, supra, the court says: "The case of Stetson v. Chicago & Evanston R. R. Co., 75 Ill. 74, is relied on for the same purpose. The question presented by that case was whether, where a railroad company, under authority from a city, has located its track upon a public street, a bill in equity will lie at the suit of an owner of lots abutting on the street to restrain the company from operating its road until the damages claimed to have been done to the lots by reason of the construction and

operation of the railway are ascertained and paid, and it was held
that such a bill would not lie, but that the party would be left to
his action at law for whatever actual damages he may have
sustained; the court having held that where there has been no
actual taking of property, and the company has constructed its
track under authority from the city, chancery has no jurisdiction.
What was said with respect to the character of the injury was
not at all necessary to a decision of the case, and must be re-
garded as mere obiter. But even if this were not so, all that
is there said may be harmonized, in the manner we have stated,
with the previous and subsequent decisions of this court upon that
question."

In the case thus commented upon, the court says: "In Hall
et al v. People, 57 Ill. 307, it was held no man could be com-
pelled to part with his property without just compensation, and
that no corporation, public or private, could rightfully appropriate
private property to its own use without first tendering or paying
the damages assessed under the forms of the law. A party ought
not to be driven to an action against a corporation responsible or
irresponsible for his damages. This would be to take his prop-
erty without first making compensation, and would be a plain
violation of a constitutional right. But the damages alluded to
are such direct damages as are incident to or naturally flow from
the taking of private property for public uses. No allusion is
made to, nor can the principles of that case be applied to con-
sequential damages not the result of taking private property. It
was never intended to apply the principle to the latter class of
cases. English statutes contain provisions, in substance, the same
as the statute we are considering, and have been the subject of
judicial construction. A leading case is Hutton v. London &
S. W. R. W. Co., 7 Hare, 26. It was ruled in that case, in the
event of damages to a party whose lands are not entered upon,
but are injuriously affected by the exercise of the powers of a
railway company upon their own lands or upon the lands of an-
other party, and for which compensation is required to be made by
section 6 of the Railway Clauses Consolidation Act (8 Vict. c. 20),

it is not unlawful for the company to execute the works which occasion the damage, before the amount of compensation for the same is ascertained, paid, or deposited.    Under the Land Clauses Consolidation Act. (8 Vict. c. 18), in case of purchasing land, or   damage directly consequent upon the purchase, the act is explicit.    The damages in the latter case must be ascertained, and both price and damages must be paid before entry, but in regard to damages given by 8 Vict. c. 20, to one person, consequential upon the exercise of the powers of the company upon its own land or upon the land of other persons not complaining, a different rule prevails.    The doctrine of Lester v. Lobley, 7 A. & E. 124, cited by the Vice Chancellor is that it is not unlawful for the company to commence work within its powers, which might be attended with damages to others, before making compensation for such expected damages.    The reason given is the impracticability in many cases of knowing whether damage will be sustained or not, and of measuring it if it were certain.    Upon the authority cited, the conclusion of the court in Hutton v. London & Southwestern Ry Co. was the acts of the company in proceeding to construct its works within its powers without first making compensation to the party claiming to have sustained consequential damages thereby were not unlawful, and hence there was no ground for the interference of a court of equity.    Our statute, to provide for the exercise of the right of eminent domain, admits of the same construction. Where lands have been taken for public use, the value of the land itself, and such damages as result directly from the taking to other lands of the owner not actually taken, must be assessed, and both price and damages paid or tendered before the right of entry exists, but where the damages are consequential upon the entry of the company upon its own lands, or upon the lands of others not complaining, the rule is different.    The company, in the latter case, is not bound to make compensation for expected damages before entering upon the work it has a lawful right to do under the powers conferred by its charter.    The party will be left to this action.    When he has settled the question of his right to damages, and ascertained the measure in an action at law, if

any reason exists why he cannot have execution of the same, equity will assist him, but not before. Dunning v. City of Aurora, 40 Ill. 481; Bliss v. Kennedy, 43 Ill. 67. Holding, as we do, there is no ground for the interference of a court of equity, it will not be necessary to discuss any other question in the case. The injunction was properly denied, and the decree dismissing the bill will be affirmed."

In the case of P. & R. Ry. Co. v. Schurtz et al., 84 Ill. 135, that court also uses the following language: "As we have seen, the fact a party has or might sustain injury indirectly constitutes no valid reason why a corporation may not enter its own lands, or upon land of others in which he has no interest, to construct a railway or other public improvement. That is this exact case. The objectionable track is constructed wholly in the street, the fee of which is conceded to be in the municipal corporation granting the license. No property of complainants has been taken for public uses, nor is there any reason for condemning any portion of it. And if the owners have sustained any damages as a result from what the railroad company has done, under its charter, on other lands under a license from the owner of the fee, redress can be had in an appropriate action at law. Such cases can be referred to no general head of equity jurisdiction. As was said in Stetson v. Chicago & Evanston Railroad, supra, the party complaining will be left to his action at law. When he has settled the question of his right to damages, and ascertained the measure, if any reason exists, as on account of insolvency, why he cannot have execution of the same, equity will then assist him by injunction or otherwise, but not before." See, also, Krone v. K. C. E. R. R. Co., 50 Hun. 431, 3 N. Y. Sup. 149.

We hold, therefore, that upon the facts presented in this case the plaintiff was not entitled to injunctive relief, and the judgment and the order denying a new trial are affirmed.

McCOY, J., took no part in this case.