Charles S. GUNN, Helen H. Gunn, William Jennings Harrison, and Bonnie Lee Harrison, Appellants,

v.

The CITY OF VERSAILLES, Missouri, a Municipal Corporation, a City of the Fourth Class, Respondent.

No. 23018.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

William H. Bolinger, Versailles, for appellants.

G. Logan Marr, Versailles, for respondent.

MAUGHMER, Commissioner.

Appellants, as plaintiffs, seek a mandatory injunction restraining the City of Versailles, Missouri, a City of the Fourth Class, from "maintaining any connection with and into" an alleged private sewer line belonging to appellants. The judgment of the trial court denied the plea for injunction and dismissed plaintiffs' petition.

The parties entered into a written stipulation of facts. Under this stipulation it was agreed and the undisputed facts are: (1) That Glendale Subdivision, containing a part of South Ross Street, was dedicated by plaintiffs as a part of the City of Versailles in 1948, and approved as such by defendant City; (2) That thereafter during 1953, plaintiffs, at their own expense, constructed an eight inch sewer line 885 feet in length along and in South Ross Street at a cost of approximately $3,000, and connected same at one end to the defendant's then existing sewer line; (3) That prior to its construction defendant City granted plaintiffs an excavation permit to construct said sewer and "at the time such excavation permit was the only right, license or permit required to be obtained by persons desiring to dig in the streets to install new sewers". The evidence shows that on February 3, 1953, the City passed a resolution authorizing the construction of this particular sewer; (4) That said sewer line has at all times been used by plaintiffs and by abutting Glendale Subdivision lot owners without objection from the City of Versailles; (5) That in July, 1958, defendant built an extension sewer line and "hooked on" to the south end of plaintiffs' sewer line without plaintiffs' permission and "with full knowledge of the claim by plaintiffs that said sewer line was private property and not for public use"; (6) That plaintiffs at the time their sewer line was

built were residents of Versailles, but do not now reside in that City. It is undisputed that plaintiffs at the time of construction owned all of the abutting lots but two on the west side and all footage on the east side except 200 feet which they had sold to the Lutheran Church. Sixteen out of a total of twenty-four lots have now been sold, but until the present controversy arose no persons except abutting property owners to whom plaintiffs had sold lots have used the claimed sewer line.

Plaintiffs' brief contains 19 assignments of error. We believe their contentions are susceptible of condensation without loss of substance. It is their position that: (1) The sewer line they constructed was and is a private sewer line; (2) The defendant City has no legal right to appropriate a private sewer line without compensating the owners as provided by statute; (3) That the protested action of the City amounts to the "taking" of private property without just compensation and without due process of law; (4) That plaintiffs have no adequate remedy at law and must, therefore, have recourse to equity and injunction.

The trial court refused to grant the injunction, found generally for defendant, and dismissed plaintiffs' petition. The record does not reveal the theory which impelled the court to such conclusion. On appeal the City asserts that a municipal corporation is without authority to grant private citizens permission to construct a private sewer in public streets; that such permission if granted is ultra vires, and that the establishment and location of sewers is a municipal legislative function. In 64 C.J.S. Municipal Corporations § 1709, p. 114, it is stated: "The owner of the fee in the street subject to the public easement has the right to lay a service pipe below the surface for the conveyance of water, gas, and other purposes, subject to the use of the street by the public, and has the right to make such excavations as will enable him to install the material or do the work requisite for the enjoyment of his rights in the land, subject to the right of the municipality to regulate the work and to impose such restrictions as will cause the least interruption of the public easement".

In our case the City, by resolution of February 3, 1953, authorized construction of the particular sewer involved here. Moreover, the parties stipulated that the City gave plaintiffs an excavation permit and "at the time such excavation permit was the only right, license or permit required to be obtained by persons desiring to dig in the streets to install new sewers". Then for five years the defendant City acquiesced in the use of this sewer line by plaintiffs and their Glendale Addition grantees. Under all these circumstances we hold that the sewer line was lawfully built and defendant is in no position to here complain that such construction was unlawful by reason of nonauthorization from the City.

The City contends that a sewer line built in a public street, connected with the city sewer system is no longer a private sewer, but a public sewer dedicated to public use. In 26 C.J.S. Dedication § 11, p. 415, the rule is thus stated: "There must be an intention on the owner's part to devote his property to the public use, in order to constitute a valid dedication, and it is the intention manifested by his acts to which the courts give heed."

In City of Irvine v. Smith, 304 Ky. 868, 202 S.W.2d 733, it was held: "Where sewers constructed by city were placed to catch surface water as it drained naturally, the fact that such culverts and sewers crossing streets were connected with private sewers did not constitute a dedication of private sewers to public use".

In City of Kansas v. Ratekin, 30 Mo.App. 416, 423, this court, in a case involving claimed sewer dedication, said: "It is sought to avoid the effect of the finding made by the trial court, by the contention that the trench across the private

ground of the Union Depot and Hannibal & St. Joseph Railroad Companies has become a sewer by dedication. But there is no evidence in the record to support such contention. I discover nothing from which a reasonable inference of a dedication could be drawn. 'Where without judicial proceedings or compensation, or solemn form of conveyance, it is sought to establish, *in pais*, a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive, and full, as to leave no reasonable doubt of the existence of the owner's intent and consent.' McShane v. City, 79 Mo. 41". We believe that plaintiffs did not dedicate this sewer line to the City for public use.

■ It is contended that sewers are essential to public health and hygiene, that under the doctrine of comparative injury, a mandatory injunction should not issue here since the injury to the City would be much greater than the benefit accruing to the private party, that plaintiffs have a remedy at law, namely, a suit for consequential damages although their injuries, if any, are so small that the trial court's discretion was properly exercised in denying issuance of the injunction. It is true that sewers are conducive to, and probably essential for, the best health and hygiene in congested areas. That is the reason cities are authorized to build, operate, maintain and extend such systems through either municipal ownership or by establishment of sewer districts. To do this cities of the Fourth Class are authorized to levy a "special public sewer tax", Sections 88.717, 88.720, V.A.M.S.

■ Our Legislature recognized the existence of private sewers in Fourth Class cities, realized that these cities might desire to take and appropriate such private sewers into a public or district sewer system and provided specific statutory procedure for such taking over. Section 88.723, V.A.M.S. provides: "Private sewers (fourth class cities). Private sewers are such sewers as have heretofore been con-

structed and shall hereafter be constructed at private expense, and they may be constructed before or after the establishment of general or district sewer systems of sewers in such cities by corporations or persons to whom the boards of aldermen of such cities shall give the right by ordinance. Such sewers shall be constructed only along such courses, streets, alleys or roadways, and of such materials, and in such manner, and subject to such regulations as to the disposition of the sewage as the board of such cities may, by ordinance, prescribe; provided, however, that such private sewers may at any time be taken and appropriated by such cities, and incorporated into or made a part of any public or district sewer system or systems by such cities, in the manner provided in sections 88.727 to 88.733".

The following Section 88.727, V.A.M.S. continues:

"Private sewers—appropriation for public use (fourth class cities). Whenever any such city may desire to take and appropriate any such private sewer and incorporate the same into, or make the same a part of, a public or district sewer system or systems of such city, the board of aldermen of such city should pass an ordinance to that effect, and should therein state the sewer district into which the same should be incorporated or made a part of. Thereupon the city engineer of such city shall ascertain and determine the proper amount of compensation to be paid for such private sewer, and report, in writing, to such board of aldermen the amount by him so ascertained and determined. Thereupon the mayor of such city shall cause to be served by the city marshal of such city upon the owner of such private sewer a certified copy of such ordinance, and also a certified copy of such report of the city engineer, and such city marshal shall make return of such service to such board of aldermen, the service thereof to be made in the same manner as is provided by law for serving process in civil actions upon defendants".

Sections 88.730 and 88.733, V.A.M.S. continue and authorize either the city or the owner, if dissatisfied with the amount of compensation reported by the engineer, to apply within ten days, to the circuit court, which court shall appoint commissioners. Next a method and manner of collecting tax money to pay for such sewers is set forth.

In Central Surety & Insurance Corporation v. Hinton, 233 Mo.App. 1218, 130 S.W. 2d 235, 239, this court held that a city must permit an abutting property owner to lay service pipes below the surface of street, subject only to the use of the street by the public, and the only right the city has in such instance is to regulate the work. The evidence here is undisputed that plaintiffs, after authorization by the City, through an excavation permit and by resolution, constructed this sewer line at a cost of some $3,000. The unit, so constructed, is encompassed, we think, within the definition of private sewers as set out in our statutes (Sec. 88.723, supra). From the standpoint of both use and cost of construction this sewer line falls within the ordinary connotation of private sewer lines.

■ Defendant City in this case is not merely doing a consequential damage to plaintiffs' property but has rather appropriated and taken it over for use by and integration into the city's sewer system. Its action in so doing is not in accordance with the procedure in such cases made and provided by our statutes, Secs. 88.723, 88.727, 88.730, 88.733, V.A.M.S., supra. Such action, without payment of just compensation to plaintiffs therefor, would amount to a taking of private property for public use without just compensation, which is prohibited by Section 26, Art. I, Constitution of Missouri 1945, V.A.M.S., and by the Fifth Amendment to the Constitution of the United States. Furthermore, such taking without compensation would be in contravention of due process of law as guaranteed by the Fifth Amendment to the Federal Constitution and by Section 10, Art. I of our State Constitution.

In Schwabe v. Moore, 187 Mo.App. 74, 172 S.W. 1157, a shoe company, with permission from a city of the Third Class, Columbia, Missouri, built a private sewer line. Later the city decided to take over such sewer and make it a part of the city sewer system. The amount of compensation therefor was agreed upon by the parties. A city taxpayer sought to restrain the making of such payment. At that time there was no statutory procedure specifically authorizing cities of the Third Class to appropriate, take over and pay for private sewers such as presently exist concerning cities of the Fourth Class. This court in that case approved the purchase, authorized payment therefor, and refused to restrain either.

■ We think the contention that the injunction should be denied because the injury to the City exceeds the benefits to the plaintiffs is untenable. The earliest case invoking this equitable doctrine is Bailey v. Culver, 84 Mo. 531, where in order to eliminate a slight highway deviation it would have been necessary to destroy a valuable brick building which was encroaching slightly into the road right-of-way. The court refused to decree an act amounting to such an unreasonable hardship. In our case the cost to defendant City would surely not exceed the cost of construction if plaintiffs had never built the private line. The City seeks to incorporate the same into its city sewer system. It can levy taxes to pay for this particular segment just as it presumably did or will to pay for the 1958 extension which it attached to plaintiffs' sewer.

■ Our statutes clearly and completely provide a method and a procedure whereby defendant City can, if it chooses, take over this private sewer line. It is not required to appropriate and use this connecting link and plaintiffs cannot compel its being taken over, but if it is appropriated, we think the City should pay for it. It is our opinion that plaintiffs have no adequate remedy at law and properly sought to

invoke the powers of equity. Condemnation, as provided by the statutes, under which the whole value of the appropriated sewer line will be determined is, we think, the only proceedings at law that would provide an adequate remedy. In a suit for damages brought for trespass plaintiffs might recover only the damages which have so far accrued, since the City might disconnect at any time. Ordinarily, an injunction will not be granted to restrain the taking of or injury to property for public use where the owner has an adequate remedy at law. Naeglin v. Edwards, Mo., 228 S.W. 764; Greene v. St. Louis County, Mo., 327 S.W.2d 291, 299. In 30 C.J.S. Eminent Domain § 401, p. 119, we find this general statement: "On the other hand, as a general rule an injunction will not be granted to restrain the taking or injury of property for a public use where the owner has an adequate remedy at law. However, the issuance of injunctions in such cases has been said to rest on broader principles than in ordinary cases. In accordance with this view, many authorities have held that an actual taking of private property for a public purpose without authority of law or without compliance with the conditions on which the right to make the appropriation is given will be enjoined without regard to the customary requirements of equitable jurisdiction, and, more particularly, without regard to the question of irreparable damages or the existence of legal remedies which may afford a money compensation". The footnote quotes the following language from three outside jurisdictions on this question.

In Gulf Lines Connecting R. of Illinois v. Golconda Northern Ry., 290 Ill. 384, 125 N.E. 357, 360, the Supreme Court of Illinois said: "When an illegal entry upon private land under color of the power of eminent domain is attempted, it will be restrained by a court of equity without regard to the usual conditions for the exercise of equitable jurisdiction. The action is based upon the attempted misuse of the sovereign power delegated by the Legislature and the protection of the individual right against the wrong".

In Hyde v. Minnesota, D. & P. Ry. Co., 24 S.D. 386, 123 N.W. 849, 852, the Supreme Court of South Dakota said: "Where the power of eminent domain has been delegated to public officers or others who are threatening to make a permanent appropriation of private property to public uses, in excess of the power granted or without complying with the conditions upon which the right to make the appropriation is given, a court of equity will prevent the threatened wrong without regard to the question of irreparable damages, or the existence of legal remedies which may afford a money compensation.

Chief Justice Fuller, speaking for the Supreme Court in Osborne v. Missouri Pac. Ry. Co., 147 U.S. 248, 13 S.Ct. 299, 301, 302, 37 L.Ed. 155, said: "The appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable".

In State ex rel. Shartel v. Humphreys, 338 Mo. 1091, 93 S.W.2d 924, 926, it was held that a mandatory injunction may be invoked to compel the undoing of something wrongfully done—in this instance the City of Maplewood "cut-off" the Richmond Heights sewer.

In Walther v. City of Cape Girardeau, 166 Mo.App. 467, 149 S.W. 36, 39, the court approved a mandatory injunction to compel a city to restore plaintiff's lot to its former condition, after having improperly taken forcible possession of the same and constructed a sewer drain through it, over his protest and in the face of notice that proceedings would be taken as promptly as possible to enjoin such action.

We believe defendant City should be allowed a reasonable time in which to officially determine its future course and act thereon. Therefore the judgment is reversed, the cause is remanded, and the court is directed, upon receipt of mandate herein,

to enter its mandatory injunction in favor of plaintiffs and against defendant, directing that defendant, within thirty days thereafter, either (1) Institute proceedings under the Missouri statutes to "take and appropriate" plaintiffs' sewer line or (2) Remove the connection heretofore made by it on the south end of plaintiffs' sewer line.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.