DAVID MILLER and MICHAEL MILLER, Plaintiffs and Appellants,

v.

C. E. HAGIE, G. G. BARNARD, and G. W. DEAHL, The Board of County Commissioners of Goshen County, State of Wyoming, Defendants and Respondents.

(No. 2259; Aug. 31, 1943; 140 Pac. 2d 746)

384

386

For the plaintiffs and appellants there was a brief and oral argument by Mr. J. A. Greenwood of Cheyenne, Wyoming.

For the defendants and respondents there was a brief by Mr. George P. Sawyer of Torrington,, Wyoming.

## OPINION

RINER, Justice.

The review is asked herein by direct appeal of a judgment of the District Court of Goshen County, Wyoming denying the appellants, David Miller and Michael Miller, plaintiffs below, an injunction whereby it was sought to restrain the defendants, respondents here, C. E. Hagie, G. G. Barnard, and G. W. Deahl as the Board of County Commissioners of said county from acting under certain eminent domain proceedings for a highway right-of-way, these proceedings being hereinafter described.

The facts material to be considered are substantially these: On November 7, 1941 the respondents named above hereinafter designated usually as the "Board" or the "defendants" acting as the Board of County Commissioners of said county at its regular session caused a "Notice of Location of Public Road" to be published

in the Torrington Telegram, a newspaper published in the town of Torrington in said county. This notice read as follows:

"To Whom It May Concern:

"The Board of County Commissioners of Goshen County, Wyoming, have decided to locate a road to be known as Torrington - Van Tassell Road, beginning at the southeast corner of the NE¼NE¼ of Section 9, Township 24 North, Range 61 West of the Sixth Principal Meridian, and running thence in a northerly direction to the northeast corner of Section 33, Township 25 North, Range 61 West; thence westerly to the northwest corner of Section 33, said township and range; thence northerly to the Interstate Canal. The plans of said road showing location in detail are on file in the County Clerk's office.

"The proposed location and width of right of way required are set forth in detail on said map on file in the County Clerk's office and may be examined at said office.

"All objections thereto and claims for damages must be filed in writing with the County Clerk of said County before noon on the 8th day of December, 1941, or such road will be established without reference to such objections or claims for damages.

"Dated this 7th day of November, A. D. 1941."

Thereafter copies of this notice were sent by mail to all the persons who owned lands adjoining the proposed highway.

Pursuant to said notice and within the time fixed therein, to-wit, December 8, 1941, the plaintiffs filed their written "Objection and Claim for Damages" with the county clerk of said county, the language thereof, omitting title, being hereinafter set forth for the most part verbatim thus:

"The undersigned, Dave Miller and Michael Miller, of Scotts Bluff County, State of Nebraska, respectfully represent that they are owners in fee of the following described real estate, to wit:

Northwest Quarter (NW¼) of Section Thir-

ty-four (34), Township Twenty-five (25), Range Sixty-one (61), Goshen County, Wyoming.

"The said Dave Miller and Michael Miller hereby object to the locating of a road in Goshen County, State of Wyoming, to be known as the Torrington - Van Tassell road. Objection to the locating of said road is made in compliance with a purported legal notice entitled "Notice of Location of Public Road", which said notice was transmitted to the aforesaid Dave Miller by United States Mail."

After setting out a copy of the notice hereinbefore quoted, the aforesaid "Objection and Claim for Damages" continues:

"The said Dave Miller and Michael Miller object to the locating of said road for the reason that the locating of said road requires the taking of an undetermined part of the real estate owned by the said Dave Miller and Michael Miller and described herein; that the taking of said real estate for said proposed road is not attempted to be done according to the statutes of the State of Wyoming and the taking of said real estate or an attempt to take the same is contrary to the laws of the State of Wyoming and of the United States. In further compliance with the said notice, the said Dave Miller and Michael Miller hereby present their claim for damages for the taking of said real estate, if the same be taken, and present their claims for damages to real estate not taken but injuriously affected, which said claim for damages is in the total amount of $5000.00.

"The within objections and claim for damages are filed solely for the purpose of complying with aforesaid notice, and the said Dave Miller and Michael Miller do not thereby waive their rights in and to the real estate described therein and to their rights to demand that the locating of said road and taking of real estate thereby be done strictly in accordance with the provisions of the Statutes of the State of Wyoming.

"Dated this............day of December, 1941.

Dave Miller
Michael Miller."

There is attached to this paper a form of verification which does not seem to have been completed though said paper is stipulated by the parties to be a "true and correct copy" thereof.

On December 8, 1941 the Board aforesaid held a special meeting and the minutes of that meeting read relative to the matter at bar:

"Claim for damages for the location of a road known as the Torrington-Van Tassell road was filed December 8, 1941 by Dave Miller and Michael Miller, wherein they state they will be damaged in the amount of $5,000 if said road is located.

"Said objection has been duly considered by the Board and the following resolution adopted:

"WHEREAS, Dave Miller and Michael Miller have filed a claim for damages in the amount above set forth for the construction of a road as described in the Notice of Location of Public Road and shown on a map on file in the County Clerk's office and

"WHEREAS, it is the desire of the Board to have the amount of said damages determined by disinterested appraisers,

"NOW, THEREFORE, Be It Resolved by the Board of County Commissioners of Goshen County, Wyoming, that Frank Jones of LaGrange, Wyoming, Emery Bright of Torrington, Wyoming, and Lee Simmons of Torrington, Wyoming, be, and they are hereby, appointed appraisers to appraise the damages, if any, caused by the construction of said proposed road, known as the Torrington-Van Tassell road.

"C. E. Hagie, Chairman."

Thereafter and on December 15, 1941 the appraisers filed their report which reads (omitting title) as follows:

"We, the undersigned being first duly sworn according to law, upon our oath depose and say that we were duly appointed appraisers by the Board of County Commissioners of Goshen County, Wyoming, to appraise the damages, if any, caused by the construction of the proposed Torrington-Van Tassell Road as shown on the map on file in the County Clerks office in Goshen

County, Wyoming; that we will duely and truely appraise the damages, if any, caused by the construction of the proposed said Torrington-Van Tassell Road where claims have been filed, to the best of our ability.

Emery Bright
Lee A Root
Lee Simmons

"Subscribed in my presence and sworn to before me this 15th day of December, 1941.

Frank Haines

(SEAL) County Clerk

### Report

"We, the undersigned Board of Appraisers in accordance with our appointment and the oath we have taken have appraised the damages caused by the construction of the proposed Torrington-Van Tassell Road, where claims have been filed to the best of our ability and after careful consideration submit the following report of our findings:

"Claim of Dave Miller and Michael Miller amount allowed—nothing.

"Benefits greater than detriment.

Emery Bright
Lee A. Root ·
Lee Simmons
Board of Appraisers."

The same day Mr. C. E. Hagie, as Chairman of the aforesaid Board, sent by registered mail addressed to the plaintiffs at Morrill, Nebraska the following letter:

"Dear Sirs:

The Board of Appraisers have filed their report on the proposed Torrington-Van Tassell with respect to your claim and the hearing on said report will be heard by the board of County Commissioners of Goshen County, Wyoming on January 7, 1942.

Yours very truly,
C. E. Hagie
Chairman of the Board of County Commissioners."

On January 7, 1942 the Board held a regular session and counsel representing both the plaintiffs was pres-

ent, a Mr. Wingett. Neither of the plaintiffs seem to have appeared at this meeting. The minutes of the Board show that action was taken by it on the date last mentioned concerning the proposed highway as follows:

"The report of the appraisers as filed Dec. 15, 1941 at 3:00 o'clock was duly considered and the same was approved. The report being on the Torrington-Van Tassell road."

There is a sharp conflict between Mr. Wingett's testimony and that of the several members of the Board as to what occurred at this meeting of the Commissioners with respect to whether plaintiffs were afforded an opportunity for a hearing on their "Objection and Claim for Damages." Mr. Wingett's testimony as elicited by counsel for plaintiffs on direct examination on this point was:

"I asked the Board of it was in session, and one of the members of the Board—I believe it was Mr. Hagie —told me the Board was in session. And I asked if they wanted to consider the proposed Torrington-Van Tassell road and the objections filed to it, and they told me that they didn't. And I said, 'Has there been an appraisal made?', and they told me there had been, and I asked if I might see the appraisal, and I don't recall whether the Clerk was present or not, but someone brought the copy of the appraisal and I made a pencil copy of it, and asked them if they were going to take that up further in the day, take up a hearing upon this objection, and they told me they were not."

On cross-examination he responded to the question "Did you ask them if they would give you a hearing some other day?" — "No, I don't believe I did."

However, Mr. Hagie, Chairman of the Board, stated on direct examination that Wingett came in and asked to see the appraisers' report which Hagie handed to him and he had a tablet and a piece of paper with him

and he copied something down which Hagie presumed was the report and picked up his hat and went out; that Wingett did not ask Hagie if the latter wanted to consider the Torrington-Van Tassell Road hearing; that Wingett's testimony on the point as given above was not true; that he did not ask for a hearing; that after he had a copy of the appraisers' report he did not ask Hagie if he was going to have a hearing; that Hagie did not tell Wingett that he (Hagie) was not going to have a hearing; that the Board was in session on January 7, 1942 and it was there for a hearing; and that Wingett did not make any request for permission to give testimony or make a record.

The testimony of the other two Board members was similar in character to that given by Mr. Hagie. When this conflict of testimony with that given by Mr. Wingett, counsel for plaintiffs, is viewed in the light of what the record discloses, the trial court could very well have concluded, as it apparently did, that plaintiffs did not ask or try to obtain a hearing on January 7, 1942 or at any other subsequent time before the Board. The record is clear that the plaintiffs were notified that a hearing on the appraisers' report would be had on the date last mentioned; that counsel representing plaintiffs appeared before the Board on that date; that he asked to see the appraisers' report; that this report was placed in his hands for examination; that he made no objection at that time to the report itself or the membership or qualifications of those who made it; that plaintiffs' counsel did not ask for a hearing on some other date; and finally that the Board as a matter of fact did actually act upon the report and officially approved it.

No appeal was ever taken by plaintiffs from the action of the respondents in approving this report though

the right to do so if they were dissatisfied was unquestionably available to them through section 52-227 W. R. S. 1931 which provides:

"Any applicant for damages claimed, or caused by the establishment or alteration of any road, may appeal from the final decision of the board of the county commissioners to the district court of the county, in which the land lies, for the taking of which for a public road, damages are asked; but notice of such appeal must be made to the county clerk, within thirty days after such decision has been made by the said board, or such claim shall be deemed to have been abandoned. No appeal shall be allowed, unless a good and sufficient bond be given by the party appealing, in a sum not less than fifty dollars to cover costs. Said bond to be approved by the clerk of the district court."

It is plain that under the former decisions of this court the instant suit for an injunction is a collateral attack upon the eminent domain proceedings described above. See Cottman v. Lochner, 40 Wyo. 378, 278 P. 71; Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 122 P. 900; North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 219 P. 561. Under such circumstances some of the rules applicable are mentioned in these decisions to the following effect:

In the Edwards case, supra, discussing the right to equitable relief, this was said:

"But mere irregularities or errors in the proceedings leading up to a judgment constitute no ground for equitable interference unless the result of fraud or collusion, or of such a nature as to deprive a party of all opportunity to defend in the action at law." * * * "So with reference to condemnation proceedings, relief in equity will be denied where it is based upon mere irregularities not rendering the proceedings invalid. A clear right to the relief in any case must be shown. Where an owner appears in condemnation proceedings he cannot afterwards enjoin an entry on grounds which might have been litigated in such proceedings. (Lewis' Em. Dom., 34d Ed., Sec. 903.) And generally where

the proper tribunal has acquired jurisdiction in condemnation proceedings they cannot be avoided collaterally for mere irregularities or errors, and objections which were available in the proceedings cannot be raised by those who were parties thereto in any collateral suit."

It is said in the North Laramie Land Company Case, supra, that:

"It is not necessary, in order to constitute due process of law, that a property owner be notified of every step of the proceedings, provided that at some stage thereof he have full opportunity to present his case to an impartial tribunal. (Citing authorities.) Among several admissible modes is that of causing the amount to be assessed by viewers or appraisers, subject to an appeal to a court carrying with it a right to have the matter determined upon a full trial. And where this mode is adopted due process does not require that a hearing before the viewers, or appraisers, be afforded, but is satisfied by the full hearing that may be obtained by exercising the right to appeal. (Citing additional authorities.)"

Quoting from 13 R. C. L. 56, Section 447 in the Cottman case, supra, it was indicated that:

"Where the body to which the statute intrusts the matter orders the opening of the way, and in doing so necessarily passes on the facts essential to its jurisdiction, every presumption is in favor of its jurisdiction and the validity of its proceedings on collateral attack. So it has been held that it will be presumed on such an attack that the required notice was given, especially in the absence of any showing to the contrary."

With these legal principles in mind we now examine the contentions advanced for appellants here together with the statutes which are relevant.

Section 52-219 W. R. S. 1931 provides:

"When claims for damages are filed, at the next regular meeting or special meeting of the board of the county commissioners, or as soon thereafter as may be

practicable and convenient, the said board shall appoint three suitable and disinterested electors of the county as appraisers, to view the ground, on a day fixed by said board, and they shall report their doings in the matter and file their report in writing with the county clerk within thirty days after the date of their appointment, fixing the amount of the damages sustained by the claimants."

Appellants point out that the minutes of the Board (quoted above) did not fix a day on which the appraisers should view the ground affected by the proposed highway. The specific provision of Section 52-219 of whose transgression complaint is made should be read in connection with the clause in Section 52-221 (infra) W. R. S. 1931 which states that the appraisers shall "view the ground so far as they shall deem it necessary." It may well be that the appraisers appointed by the Board on December 8, 1941 were so thoroughly familiar with the property of appellants involved that a meeting to view the land was deemed by the Board and by said appraisers quite unnecessary.

In Larson v. Fitzgerald, 87 Iowa 402, 54 N. W. 441, the suit was for an injunction to prevent the obstruction of an alleged public highway and the court said in the course of the opinion filed:

"This proceeding was had under the Code of 1851, which, after providing for the appointment of a commissioner to examine into the expediency of the proposed road, provides as follows, (section 524:) 'The time for the commencement of such examination shall be fixed by the court, and, should the commissioner for any cause fail to commence on the day, the court may fix another for that purpose.' No time was fixed for the commencement of the examination. Under section 527, if the commissioner did not report in favor of the proposed road, 'no further proceedings shall be had thereon.' The evident purpose of requiring the time to be fixed was that parties interested might be heard, but as, in cases where the report was favorable to the loca-

tion, parties had a right to be heard before the county court, we do not think such an omission would render the proceedings illegal."

In the case at bar the appellants were given by law the right to be heard before the Board and also the right of appeal from its action to the District Court of Goshen County. Section 52-222 W. R. S. 1931, in its first sentence reads:

"At the next meeting of the county commissioners after the report of the appraisers has been filed, or as soon thereafter as may be practicable, the said board may hear testimony and consider petitions for and remonstrances against the establishment or alteration, as the case may be, of any road, or may establish or alter any road or may refuse so to do, as in the judgment of the said board, the public good may require, but in case there shall be no claim for damages filed, they shall act as speedily as possible in the matter. * * *;"

While the failure to fix a time for the meeting of the appraisers was doubtless an irregularity, we do not think such failure rendered the proceeding illegal.

Section 52-221 W. R. S. 1931 reads:

"The said appraisers shall, within ten days after receiving notice of their appointment, meet at some convenient place, on the line of said proposed or altered road, and take and administer to each other, an oath or affirmation to faithfully and impartially discharge their duties. They shall then view the ground, so far as they shall deem it necessary, and fix the amount of damages sustained by each claimant, after allowing for all benefits that may accrue to each claimant, by reason of the location or alteration of the said proposed road. They, or a majority of them, shall as soon as practicable, after performing their said duties, make a report in writing to the county clerk of their doings, stating that they were so sworn or affirmed as aforesaid, before performing their duties and fixing the amount of damages, if any, sustained by each claimant, after allowing and deducting for benefits, and where they have disallowed claims for damages, they shall so state in their

report, and they shall immediately transmit their report, when made, to the county clerk. They shall, whenever they can conveniently do so, notify the claimants or their agents, of the place of their meeting and may hear such evidence as they may deem necessary in determining the amount of damages fixed by them. They are hereby authorized to administer oaths to each other and to such witnesses as they may hear. If any one of them shall fail or refuse to perform his duty, the other two appraisers shall serve and shall appoint a suitable and disinterested elector in his place, who shall be within easy access, and he shall be sworn or affirmed in like manner as the other two appraisers, and the facts of such appointment and qualification shall be stated in said report to the county clerk. The said appraisers shall each receive for his compensation such reasonable sum as the board of county commissioners shall allow."

In connection with these statutory provisions it is urged that the record discloses that the appraisers did not take a proper oath "to faithfully and impartially discharge their duties," that the oath was administered by the county clerk and not by the appraisers themselves and that the appraisers' report did not show how Lee A Root became an appraiser in lieu of Frank Jones originally selected by the Board.

Touching the matter of the oath taken by them, it appears from the report of the appraisers, supra, that the several members, Emery Bright, Lee A. Root, and Lee Simmons, took oath to duly and truly appraise the damages "caused by the construction of the proposed said Torrington-Van Tassell Road where claims have been filed to the best of our ability."

In Zechiel v. Fireman's Fund Ins. Co., 61 Fed (2d) 27, the opinion takes an excerpt from Robertson v. Perkins, 129 U. S. 233, 9 S. Ct. 279, 32 L. Ed. 686 which in turn quotes from the New York Court of Appeals in Lorillard v. Clyde, 86 N. Y. 384 to the following effect: "The word 'duly' means in a proper way or

regularly or according to law." See authorities to the same purport assembled in 13 Words and Phrases (Perm. Ed.) 606-8. The Supreme Court of Pennsylvania in the case of Paschall Street, 81 Pa. 118, disapproved a contention that, as the law under which viewers appointed to appraise the damages caused by the establishment of a road required them to take an oath "to perform their duties impartially and to the best of their judgment" when as a matter of fact they were sworn to "perform their duties in the premises according to law," this was insufficient and the court said:

"As we find nothing on the record beyond the statement that all the jurors preesnt 'were duly sworn or affirmed to perform their duties in the premises according to law,' this exception must fall. As we must presume all things to have been rightly done, unless the contrary appear, and as the words, 'according to law,' necessarily mean according to the form prescribed by law, we must assume that the statute, in this particular, was complied with."

"Truly" is defined by Webster's New International Dictionary as embracing the meaning "faithfully". Consequently we think that the appraisers in the matter at bar bound themselves by oath to perform their duties according to the law and faithfully, i. e., to do the work assigned them "faithfully and impartially" as the statute directs.

Concerning the complaint that the appraisers were not sworn by themselves and instead by the county clerk, this failure to exactly follow the provisions of Section 52-221, supra, would at most seem also to be a mere irregularity. The county clerk is by law authorized generally to administer oaths. Section 89-1601 W. R. S. 1931. We hardly think that the method prescribed by Section 52-221 was intended to be exclusive. We are more inclined to the view as expressed by counsel for respondents that the intention of the legislature

in phrasing the law as it did was to avoid inconvenience to the appraisers in the event a person authorized to administer oaths was not available. This statutory provision is especially adaptable to the conditions prevailing in many of the sparsely settled portions of our state.

We also think that the fact that the report of the appraisers does not disclose how Lee A. Root took the place of Frank Jones who seems to have been first selected to serve is not such a defect as would invalidate the entire proceeding, but at most an irregularity. The report shows that Root was appointed an appraiser by the Board; that he took the proper oath and discharged the duties assigned him. No complaint that he was not a properly qualified appraiser or unable to perform his duties faithfully and impartially was made to the Board at any time. We have seen that counsel for plaintiffs made a copy of this report in the presence of the Board, but nevertheless made no criticism of that character; he gave the Board no opportunity to correct the matter if he thought it of such vital importance and, as we have already observed, additionally the plaintiffs had the right of appeal to the District Court on the point but never invoked it.

Again it may be noted that in Morris v. Mayor etc. of the City of New York, 8 N. Y. S. 763, the court referring to a decision of the New York Court of Appeals says:

"As to the objection based upon the alleged incapacity of one of the commissioners, it was, for the purpose of deciding upon a similar objection in *Astor* v. *Mayor, etc.,* 62 N. Y. 588, stated that the objection was that one of the commissioners had no jurisdiction to act, his appointment being *ex parte* and a nullity; and the court say that 'without, however, discussing the question as to the legality of the appointment of this commissioner, it is sufficient to say that it is too late to raise the question after the report of the com-

missioners has been confirmed by a competent tribunal.' And we must regard that case as decisive upon the question raised in this case as to the competency of the commissioner."

It is claimed for plaintiffs that the description of their land proposed to be taken for highway purposes does not properly appear in the eminent domain proceedings at bar. We are unable to agree with this contention.

Section 52-216 W. R. S. 1931 provides for the publication or posting of the notice of location of the proposed highway and then continues to say that the "notice may be in the following form:

- "To all to whom it may concern: The board of county commissioners have decided to locate (or alter, as the case may be) a road commencing at......................
in......................county, Wyoming running thence (here described in general terms the points and courses thereof), and terminating at.................................
"All objections thereto or claims for damages by reason thereof must be filed in writing with the county clerk of said county, before noon on the.............day of .............................A. D.............................or such road will be established (or altered) without reference to such objections or claims for damages.
...................................................County clerk.
Dated.................................................A. D.
"The county commissioners shall cause a copy of the above notice to be mailed by registered mail to all persons owning lands or claiming any interest in any lands over or across which said road is proposed to be located or altered. The publication and posting of such notice shall be a legal and sufficient notice to all persons owning lands or claiming any interest in lands over which the proposed road is to be located or altered."

It will be observed that the notice in the case at bar followed the suggested form in supplying the point where the proposed highway begins, its termination and the intervening general course thereof. In addition to this, the notice states as above recited that the "plans

of said road showing location in detail are on file in the county clerk's office" and that the proposed location and width of the right-of-way required "are set forth in detail on said map on file in the county clerk's office and may be examined at said office." This notice was received by the plaintiffs and, as above set forth, is copied into their "Objection and Claim for Damages."

In Hall v. Manchester, 39 N. H. 295, an objection of the character now being considered was discussed in the following language:

"The objection was, that the description of the highway thus recommended to be discontinued was defective for uncertainty. But it was held that 'that is certain which may be made certain,' and that the description of the highway given by reference to the record of the laying out thereof upon the petition of Kenney and others, to be found extended at length in the same court, was sufficiently certain and specific to enable the court to know and understand, without the possibility of mistakes, what particular road was designed to be discontinued, and its exact locality and characteristics. We cannot see that it makes any difference whether the reference be to a record to be found in the same court, or a record to be found in the registry of deeds in the same county; that office being of as public a character and equally as accessible to all for the purposes of information or of obtaining copies, as the office of the clerk of the court. If that is certain which may be made certain, we see no difficulty in the one case more than in the other. See, also, Milford's Petition, 37 N. H. 57."

See also the Quincy Missouri and Pacific R. R. Company v. Kellogg, 54 Mo. 334.

In Stone et al. v. City of Cambridge, 6 Cush. 270, it was held that an order of the Mayor and Aldermen of that city for the laying out and establishing of a highway which described the proposed road as "delineated on a plan now before this board" was sufficiently certain and that it might be shown by parol evidence that

a plan produced from the city clerk was the "plan before the board" thus referred to, Chief Justice Shaw writing the opinion. The Chief Justice pointed out that:

"* * *id certum est quod certum reddi potest. It is a familiar rule, in constant practice, in its application to deeds, grants, locations, and other written documents, that the length and directions of lines, their curves, angles, and changes, may be proved by a chart, plan, or survey, annexed or definitely referred to."

Although the plaintiffs here were thoroughly familiar with the notice given as aforesaid and the office of the county clerk, being a public office, was open for the examination of the details of the proposed road as set forth by the plans on file in that office, they either did not examine them or they concluded upon examination that the details furnished were amply sufficient and sufficiently specific. No objection or complaint of any kind on this score was made to the Board at any time by plaintiffs or their counsel though abundant opportunity was afforded them to do so. Further, if that were not so, they unquestionably had the right of appeal to the district court whereby this matter could have been ordered to be set right in the event the details of the proposed highway plan were in any way deficient in certainty.

Finally it is a familiar legal principle that an injunction will ordinarily not be granted where the complaining party had an adequate remedy at law, and this rule has often been applied when an injunction has been sought against the exercise of the right of eminent domain. See 133 A. L. R. 11, 104 and cases cited in extensive note; 18 Am. Jur. 1033, Section 386.

In the case at bar, it is evident that the plaintiffs could have litigated all the matters now urged before this court in the District Court of Goshen County by

taking an appeal from the action of the respondents. They did not do so. We accordingly, all things considered, reach the conclusion that the judgment of the District Court should be affirmed.

Nevertheless we feel that it should be said in closing this opinion that officials charged with the duty of exercising the right of eminent domain should be most careful to let no irregularity of any kind creep into proceedings of that character even though they may not be of such a nature as would vitiate the proceedings. The law for the establishment of highways is reasonably clear and every possible effort should be made to follow it carefully and accurately.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.