FAUSKE, Respondent v. DEAN et al., Appellants

(101 N.W.2d 769)

(File No. 9761. Opinion filed March 12, 1960)

**Parnell J. Donohue,** Atty. Gen., **John L. Wilds,** Asst. Atty. Gen., for Defendants and Appellants.

**Bangs, McCullen & Butler,** and **H. F. Fellows,** Rapid City, for Plaintiff and Respondent.

BIEGELMEIER, J. Plaintiff brought suit against the defendant members of the State Highway Commission of the State of South Dakota to restrain them from constructing a controlled-access interstate highway in a manner not in conformance with plans and testimony introduced in the prior condemnation action when the right of way was acquired. Plaintiff owns three tracts of land; a home place of 2,900 acres, 320 acres pasture and 160 acres wheatland Each tract is two or three miles distant from the other. The pasture is surrounded by land owned by the United States. The evidence in the condemnation action showed that plaintiff, under the Taylor Act, had a permit to pasture 190 head of cattle on the government land. See State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675, 683. The condemned highway angles in a northwesterly-southeasterly direction through the plaintiff's 320-acre pasture and 160-acre wheatland and the government land.

At the trial of the condemnation action the plaintiff in this action was permitted to show, and the jury was instructed that he could recover, not only the value of the 40.66 acres taken in fee, the highest value of which was testified to be $35 per acre, but also damage to his whole ranch unit. The controlled-access highway is to be fenced so as not to allow livestock to cross the highway at grade; it divides the common pasture with one-third to the south and two-thirds to the north; to permit livestock to graze on all the pasture, the plans and specifications introduced in evidence and testified to on behalf of the state showed two 7x7 concrete cattle underpasses and 232-ft. bridge over Whitewater Creek with roadways on each side under this bridge; all of these structures were to be built on the government land and none on plaintiff's land. A layout of a proposed interchange was introduced in evidence; the State Highway Engineer testified it represented a "future proposed faci-

lity". It included an overpass of the four-lane highway which would permit traffic to traverse, enter and leave the highway without crossing it at grade. This interchange was to be constructed over four miles from plaintiff's buildings on or near the section line highway between sections 15 and 16 to the west of the wheatland within the rights of way of the public highways. At the condemnation trial the plaintiff and witnesses on his behalf testified the proposed cattle passes did not provide sufficient access for his cattle to go from his ranch unit to the common pasture, and that the overpass on the interchange would not be sufficient for transfer of his machinery for his farming operations of the wheatland.

■ The state paid the jury's condemnation award of $6,427 and thereafter let contracts for the construction of the highway in which the 7x7 cattle underpasses and the interchange were omitted. This injunction suit followed. The circuit court entered a judgment restraining the defendants from constructing the highway on plaintiff's ranch unit in a manner not in strict conformance with the plans and specifications introduced in evidence at the trial of the condemnation proceeding. Section 13 of Article VI of the Constitution of the State of South Dakota in part provides:

> "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken."

Plaintiff urges this provision, Searle v. City of Lead, 10 S.D. 312, 73 N.W. 101, 39 L.R.A. 345 and Hyde v. Minnesota, D. & P. R. Co., 24 S.D. 386, 123 N.W. 849, authorize the trial court's injunction, while defendants contend that this Hyde decision requires a contrary result. The equitable jurisdiction and power to issue injunctions is recognized and granted by Art. V, §§ 3 and 14 of our Constitution. Inadequacy of a remedy at law is a basis on which a court of equity founds the exercise of its power to afford relief by in-

junction Holdcroft v. Murphy, 66 S.D. 388, 283 N.W. 860; see Beatty v. Smith, 14 S.D. 24, 84 N.W. 208; Miller v. Hagie, 59 Wyo. 383, 140 P.2d 746, and 18 Am.Jur., Eminent Domain, § 386 at p. 1033.

 The reasoning in Hyde v. Minnesota was that if plaintiff had sustained any damages redress could be had in an appropriate action at law against the railroad. Here it is claimed the state will cause the damage by the planned road construction. An action at law cannot be maintained against the state in the absence of constitutional or statutory authority. Griffis v. State, 68 S.D. 360, 2 N.W.2d 666. No consent has been given to sue for damages such as are here involved. It follows that plaintiff has no remedy at law against the state and the holding in the Hyde injunction case has no application. The only remedy available to plaintiff, if he has sustained legal damage is by injunction. Such an action against state officers is not an action against the state. Suits in equity against persons who, while claiming to act as officers of the state, violate and invade property rights under color of authority unconstitutional or void are not suits against the state. White Eagle Oil & Refining Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397. Art. VI, § 13 of the Constitution compels all persons who may be armed with the power of eminent domain of first paying just compensation to the owner before taking possession. This includes the state and its officers and a court of equity will intervene to keep them within their authority. Hyde v. Minnesota, supra.

 The record shows that after entry of the judgment the State Highway Commission filed a resolution adopted before entry of the judgment, directing that the 7x7 foot cattle passes be reinstated in the plans and be built; on oral argument plaintiff conceded they had been built. It often happens that there is a change in conditions between the commencement of the action and the trial that a different situation is then presented. See Alsager v. Peterson, 31 S.D. 452, 141 N.W. 391. In Ericksen v. John Morrell & Co., 70 S.D. 38, 14 N.W.2d 88, this court affirmed a denial

of an injunction against a wrongful act, the pollution of a river, which existed at the time of commencement of the action but was discontinued before judgment. The Commission's action indicates an intention to complete the two lanes with the cattle passes so there is no threat of change of plans as appeared at the trial. Relief by injunctions operates in futuro and the right to it may be determined as of the time of the decision in the appellate court. American Fruit Growers, Inc. v. Parker, 22 Cal.2d 513, 140 P.2d 23; Cal-Dak Co. v. Sav-on Drugs, Inc., 40 Cal.2d 492, 254 P.2d 497. While generally speaking, courts of final resort confine investigations of facts to the record presented at the time the appeal was perfected, in injunction actions it may take cognizance of those occurring during the pendency of the appeal where they bear directly on the question presented by the appeal. City of Tulsa v. Chamblee, 188 Okl. 94, 106 P.2d 796. See Smith v. Reid, 60 S.D. 311, 244 N.W. 353; 5B C.J.S. Appeal and Error § 1842, p. 250.

 The record here and the completed construction obviate the reason for continuing the injunction. Where compliance with an injunction was shown on appeal it has been vacated. Borgnemouth Realty Co. v. Gulf Soap Corporation, 212 La. 57, 31 So.2d 488; Green v. Skermetta, La.App., 57 So.2d 762. The judgment is continuous and prohibits any changes in the future if and when a second lane is constructed without regard to the interest of plaintiff, if any, at that time. His situation may be entirely different. Under the Taylor Grazing Act, (43 U.S.C.A. §§ 315-315r) his permits may have been revoked as they are "mere licenses, revokable at will without legal right to compel compensation". Osborne v. United States, 9 Cir., 145 F.2d 892, 893: United States v. Cox, 10 Cir., 190 F.2d 293, or the United States may have taken exclusive possession of the permit land as it is only "a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation." Osborne v. United States, supra. This court recognized this in State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675, 683. Therefore,

it is not required that we consider plaintiff's present status as permit holder to restrain the change of plans of construction on the government land. See Osborne v. United States, supra; United States v. Cox, supra; United States v. Jaramillo, 10 Cir., 190 F.2d 300.

The trial court's judgment further required the state to construct the interchange shown in the plans "but not until such time as a two-lane portion of said highway is constructed and open for travel to the public, * * *". It was stipulated that unless enjoined the interchange would not be constructed until some indefinite date when a second lane is constructed and the present plans of construction consist of only a crossing at grade. In the condemnation action plaintiff testified the overpass of the interchange, as he understood it, would not be of sufficient size to permit passage of his machinery to the north part of his wheatland, that no one would want to plank an 800-ft. overpass and the cost of loading machinery on a lowboy would be prohibitive. The state showed the width was to be greater than plaintiff assumed and the jury considered all this evidence. He was fully compensated for any damage the interchange might cause him. The damages were awarded on the basis that an overhead crossing would be constructed at the interchange. The overhead crossing has not been omitted or eliminated from the plans and specifications. It will not be constructed until the need arises by reason of the construction of the four-lane highway. In the meantime the plaintiff has a convenient and readily accessible right to cross the intersection at grade. The plaintiff has not suffered and will not suffer any damages by reason of the interchange for which he has not been fully compensated. He has, therefore, no standing to ask for injunctive relief. The judgment is reversed.

ROBERTS, P. J., and SMITH and HANSON, JJ., concur.

RENTTO, J. (dissenting in part). I concur in that portion of the opinion reversing the trial court's judgment in so for as it involves the interchange, but do not agree with the reason assigned by the majority for so doing. They

say that Fauske has no standing to ask for injunctive relief as to it because he has been fully compensated for any damage he may suffer by reason thereof. While there was evidence that this would cause him damage the state put in testimony that its inclusion in the improvement substantially diminished the detriment otherwise caused him by the new highway. If so, it was not a damage to him but rather a benefit. I believe that it is not for us to choose between these conflicting views.

If it was in fact a benefit, and that was for the jury to say, then I think it would violate the rules of fair dealing to permit the state, after the award has been made, to remove from the improvement a feature which it urged at the trial in diminution of the loss caused the landowner by the taking. However, the record does not show that the construction plans of the state in this regard are changed from those relied on in the condemnation trial. For this reason I feel the injunction as to the interchange is improper.

Concerning the disposition made as to the underpasses I am unable to agree. In the record, in which incidentally I have not been able to find a certificate of settlement, there appears a resolution by the state reinstating the underpasses. This is not a certified copy of the resolution as contemplated by SDC 36.0901, but merely a letter purporting to be that of the Director of the Department of Highways. How it got into the record I am unable to discover. Clearly, no foundation appears to make it admissible evidence. It is not marked as an exhibit nor was it mentioned in the trial or brought to the court's attention in any of the proceedings leading up to the judgment.

On this document the majority, on their own motion, reverse the judgment of the trial court as to the underpasses. This is predicated on the ground that in injunction suits an appellate court may take cognizance of facts occurring during the pendency of the appeal where they bear directly upon the question presented by the appeal. Assuming that such is the rule, I think that it does not apply here because the reinstatement of the underpasses did not occur during

the pendency of this appeal. Rather, it happened while the case was still in the trial court and before its decision was made and judgment entered. Present counsel did not then represent the state. It seems to me that in fairness to the trial court, and to the other party, the state should have brought this to attention of the court promptly. When the state, or one of its agencies, becomes a party litigant it is under the same obligations as any other suitor, unless a statute or rule makes an exception.

Without the benefit of this evidence the trial court properly found that the underpasses had been eliminated from the improvement. On the basis of this resolution the majority now decide this fact issue to the contrary. That I think is not our province. As an appellate court our proper function is to review matters decided by the trial court on the record that was before that court. I see no reason why we should depart from that basic rule in the circumstances of this case, and good reason why we shouldn't. Accordingly, I would remand it to the trial court for a determination of this question of the underpasses on the basis of present facts. That was the course taken in some of the cases from other states cited by the majority.

I have been unable to find any decisions of this court supporting the action of the majority. The Smith case comes the closest to being in point but it concerns supplemental evidence which came into existence during the pendency of the appeal and not when the matter was before the trial court. Also the supplemental evidence there considered was not inconsistent with the trial court's finding but supported it. To me it is significant that the court very carefully limited its holding to the circumstances of that case.

If we accept the statements made on oral argument as establishing that the underpasses have been completed, then I would dismiss this portion of the appeal because the state by acquiescing in and complying with the judgment has waived its right of appeal. Assuming that the injunction should be vacated on this ground it seems to me that also is something that should be done in the trial court.