2004 SD 74

**Rocky LADSON, Plaintiff and Appellee,**

v.

**BPM CORPORATION and Leigh Patten, a/k/a Agnes Patten, Defendants and Appellants.**

**No. 23035.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 2004.

Decided June 2, 2004.

David L. Claggett, Spearfish, South Dakota, Attorney for plaintiff and appellee.

Brian Utzman of Smoot & Utzman, Rapid City, South Dakota, Attorneys for defendants and appellants.

GILBERTSON, Chief Justice.

[¶1.] Rocky Ladson (Ladson) brought an action against BPM Corporation (BPM) and its manager, Leigh Patten (Patten) to recover damages caused when BPM's cattle and sheep repeatedly crossed onto Ladson's property. A trial court granted Ladson damages and issued a permanent injunction barring BPM from keeping any livestock adjacent to Ladson's property. BPM and Patten now appeal, and we affirm the judgment of the trial court.

## FACTS AND PROCEDURE

[¶ 2.] Ladson and BPM own adjacent property in Butte County, South Dakota. BPM is a South Dakota corporation with its principle place of business in Butte County. Patten acts as BPM's secretary and manager. BPM owns and raises cattle and sheep, while Ladson primarily raises horses and grows hay on his land.

[¶ 3.] In the winter of 2002 through 2003, BPM's cattle and sheep frequently trespassed on Ladson's property causing damage to fences, a battery charger, and other property. The animals also consumed several of Ladson's hay bales and pasture land. Ladson repeatedly called the Butte County Sheriff and Deputy Sheriff to his property regarding the trespassing livestock. At the trial before the court, the Sheriff and Deputy Sheriff both testified they had observed BPM's livestock return to BPM property from Ladson's property, and they further testified to observing the damage to Ladson's property caused by the livestock.

[¶ 4.] Ladson notified Patten of the damage caused by BPM's cattle and sheep in February 2003. On March 14, 2003, BPM and Patten were served with a Summons and Complaint by the Butte County Sheriff's office. Thereafter, Patten filed an Answer and Counterclaim for herself and purportedly on behalf of BPM. On at least two occasions before trial, the trial court informed Patten she could not personally represent BPM and that the corporation must appear through an attorney. At a pretrial conference held one week before the trial, the trial court again notified Patten that BPM must appear through an attorney and that it was technically in default because it had not properly filed an answer to the complaint. Despite these warnings, no counsel ever appeared on behalf of BPM.

[¶ 5.] On August 4, 2003, a trial to the court was held in the Butte County Courthouse. As no appearance was made by BPM, the trial court held the corporation in default. The trial court found that BPM's livestock had repeatedly trespassed on Ladson's property, and it awarded damages to Ladson. The trial court further granted a permanent injunction prohibiting BPM from keeping any livestock on its land adjacent to Ladson's property. BPM and Patten now appeal, raising the following three issues for our review:

1. Whether a permanent injunction is an appropriate remedy for trespassing livestock.

2. Whether the trial court abused its discretion when it granted a permanent injunction barring BPM from keeping livestock on its land adjacent to Ladson's property.

3. Whether the trial court erred in holding BPM in default.

## STANDARD OF REVIEW

[¶ 6.] Statutory construction is an issue of law reviewed de novo on appeal. *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611. In *Sjomeling v. Stuber*, we stated: "[g]ranting or denying an injunction rests in the sound discretion of the trial court [and][w]e will not disturb a ruling on injunctive relief unless we find an abuse of discretion." 2000 SD 103, ¶ 11, 615 N.W.2d 613, 616 (citation omitted). "The decision to grant or deny relief from a default judgment rests with the sound discretion of the trial court and we will not disturb the trial court's decision absent an abuse of that discretion." *Upper Plains Contracting Inc. v. Pepsi Americas*, 2003 SD 3, ¶ 11, 656 N.W.2d 323, 327 (citation omitted).

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether a permanent injunction is an appropriate remedy for trespassing livestock.**

[¶ 8.] BPM and Patten first argue that a permanent injunction is never an appropriate remedy for trespassing livestock. They claim the Legislature has explicitly mandated what remedies may be imposed in such a situation. As this primarily raises an issue of statutory construction, our review is de novo. *Martinmaas*, 2000 SD 85, ¶ 49, 612 N.W.2d at 611.

[¶ 9.] SDCL 40–28–4 provides:

Except as in this chapter otherwise provided, any person owning or having charge or possession of any buffalo, horses, mules, cattle, goats, sheep, or swine that trespass upon the land, either fenced or unfenced, owned by or in possession of any person, or being cropped by any person injured by such trespass, is liable to any such person injured for all damages sustained by reason of the trespass. No person is liable under this chapter if the person injured has maintained an inadequate partition fence and notice thereof has been given pursuant to § 43–23–5 or if the person is not required to build the fence because of frozen earth pursuant to § 43–23–7.

In addition, according to SDCL 40–28–18, "[d]amages under § 40–28–4 may be recovered in a civil action, in any court having jurisdiction thereof in the county where such damage may have occurred, and the proceedings shall be the same as in other civil actions, except as modified in this chapter."

* SDCL 21–8–14 provides:

Except where otherwise provided by this chapter, a permanent injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:
(1) Where pecuniary compensation would not afford adequate relief;
(2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

[¶ 10.] Based upon these two statutes, BPM and Patten maintain that the Legislature unambiguously limited the remedies for trespassing livestock to money damages or retention of trespassing livestock until payment of those damages. In other words, because injunctive relief is not mentioned or provided under these statutes, BPM and Patten believe that injunctive relief was not a remedy available to the trial court. We disagree.

[¶ 11.] South Dakota has long recognized injunctive relief as an available remedy. *Fauske v. Dean*, 78 S.D. 310, 313–14, 101 N.W.2d 769, 771 (1960) (citing *Holdcroft v. Murphy*, 66 S.D. 388, 283 N.W. 860 (1939); *see* S.D. Const. art. V, § 5. Injunction may be granted under statutory authority found in SDCL 21–8–14 and 21–8–15.* "Inadequacy of a remedy at law is a basis on which a court of equity founds the exercise of its power to afford relief by injunction." *Fauske*, 78 S.D. at 313–14, 101 N.W.2d at 771 (citation omitted)). The Legislature, however, has limited the power of South Dakota courts to issue injunctions in certain circumstances:

[¶ 12.] An injunction cannot be granted:

(1) To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings;

(3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or
(4) Where the obligation arises from a trust.
SDCL 21–8–15 provides: "A permanent injunction is obtained by a judgment or decree in a civil action under the procedure applicable to all civil actions and subject to the limitations of this chapter or other applicable statutes."

(2) To stay proceedings in a court of the United States;

(3) To stay proceedings in another state upon a judgment of a court of that state;

(4) To prevent the execution of a public statute, by officers of the law, for public benefit;

(5) To prevent the breach of a contract, the performance of which would not be specifically enforced;

(6) To prevent the exercise of a public or private office in a lawful manner, by the person in possession;

(7) To prevent a legislative act by a municipal corporation;

(8) To enforce a penal law, except in case of nuisance or except when specifically authorized by statute;

(9) To enforce a penalty or forfeiture in any case.

SDCL 21–8–2; *see also* SDCL 10–27–1 (prohibiting injunctive relief in cases attempting to delay collection of a tax).

[¶ 13.] South Dakota courts generally possess the authority to issue an injunction where not prohibited by the Legislature and where there is not an adequate remedy at law. In this case, the trial court found there was not an adequate remedy at law based upon the continued trespass of BPM's livestock. Such an injunction is not prohibited by any South Dakota statute. Thus, BPM's and Patten's general challenge to the injunction fails. We now turn to their contention that an injunction was an inappropriate remedy in this particular case.

[¶ 14.] **2. Whether the trial court abused its discretion when it granted a permanent injunction barring BPM from keeping livestock on its land adjacent to Ladson's property.**

■ [¶ 15.] BPM and Patten argue that even if an injunction may be an appropriate remedy for trespassing livestock, the trial court should not have issued a permanent injunction under the facts of this case. Our standard of review for this issue is well-defined and "[w]e will not disturb a ruling on injunctive relief unless we find an abuse of discretion." *Hendrickson v. Wagners, Inc.*, 1999 SD 74, ¶ 14, 598 N.W.2d 507, 510 (citation omitted). In this context, abuse of discretion "can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence." *Id.*

[¶ 16.] SDCL 21–8–14 provides:

Except where otherwise provided by this chapter, a permanent injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:

(1) Where pecuniary compensation would not afford adequate relief;

(2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

(3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or

(4) Where the obligation arises from a trust.

Here, the trial court found that an injunction was necessary to prevent further litigation and damage to Ladson's property. This Court has also utilized four basic factors to guide our review of injunctive relief:

1) Did the party to be enjoined cause the damage?

2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law?

3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an "innocent mistake"?

4) In balancing the equities, is the "hardship to be suffered by the [enjoined party] . . . disproportionate to the . . . benefit to be gained by the injured party"?

*Wagners, Inc.*, 1999 SD 74, ¶ 9, 598 N.W.2d at 511 (quoting *Knodel v. Kassel Township*, 1998 SD 73, ¶ 9, 581 N.W.2d 504, 507).

[¶ 17.] The first and third factors are clearly met in this case. There is no dispute BPM's livestock trespassed and caused damage to Ladson's property. Nor does BPM or Patten attempt to argue that the damage to Ladson's property was the result of an "innocent mistake."

[¶ 18.] Rather, BPM and Patten attempt to argue that the second and fourth factors are not satisfied. Under the second factor, they argue an adequate remedy at law exists because the trial court could have awarded money damages to Ladson for further trespass by BPM livestock. Under the facts of this case, we disagree. Testimony by the Butte County Sheriff's office established the continued trespass of BPM livestock on to Ladson's property—trespass that continued even after the trial court issued an interim court order prohibiting the same. Although, Patten denied that she intentionally allowed the livestock to enter Ladson's property in order to obtain adequate feed and water, the trial court specifically found Patten to be a noncredible witness. Moreover, as the trial court observed, repeated pecuniary compensation would not afford adequate relief because it is often difficult to ascertain the exact cost of feed, water, and pasture consumed by trespassing livestock. Consideration of the second factor supports the trial court's decision to issue the injunction.

[¶ 19.] Under the fourth factor, BPM and Patten argue that the benefit gained by Ladson was disproportionate to the hardship they will suffer if unable to keep livestock on land adjacent to Ladson's property. They claim that the injunction prohibits them from using some of their best pasture land and contend the trial court should have ordered the parties to improve the fences between the properties, each at their own expense. First, we note that balancing the equities under the fourth factor is not always necessary. *Prairie Hills Water & Development Co. v. Gross*, 2002 SD 133, ¶ 39, 653 N.W.2d 745, 754 (citation omitted). We also note Ladson sought an injunction prohibiting BPM from keeping livestock on any of its property. In balancing the equities, however, the trial court found this would effectively dissolve BPM's ranching operation, a hardship disproportionate to the benefit gained by Ladson. Thus, in order to put an end to the controversy and stop the continued trespass of BPM's livestock, the trial court issued an injunction prohibiting it from keeping cattle or sheep on land adjacent to Ladson's property. While we recognize that prohibiting an individual or corporation from use of its land is a sanction of the most serious kind, herein the record indicates the trial court considered lesser alternatives and concluded they would not grant relief to Ladson. Typically, one would assume a good fence would solve the problem. However, here the trial court entered the following finding of fact on that option:

BPM's cattle and sheep repeatedly damaged the fence line bordering the Ladson–BPM boundary, entering onto the Ladson property for the purpose of obtaining food and water. Patten allowed BPM land to be overgrazed and did not provide the livestock with adequate food and water. The livestock went through the boundary fences to obtain food and water on Ladson's land because defendants had failed to provide the same.

Moreover, the trial court has continuing jurisdiction over its injunction and may modify it at any time it is convinced by BPM and Patten that a lesser sanction will suffice. Given, the facts of this case, we believe the trial court adequately balanced the equities of the parties.

[¶ 20.] After considering the above factors, we do not believe the trial court abused its discretion in granting a permanent injunction barring BPM from keeping livestock on land adjacent to Ladson's property. Without a permanent injunction, it is likely that Ladson will be forced to bring an unknown number of future lawsuits to address his pecuniary losses caused by BPM's livestock. As we observed in *Wagners, Inc.*, 1999 SD 74, ¶ 24, 598 N.W.2d at 512, "[a] trip to the courthouse to settle a legal dispute should be dispositive and not an annual event." The trial court is affirmed on this issue.

[¶ 21.] **3. Whether the trial court erred in holding BPM in default.**

■ [¶ 22.] The trial court held BPM in default because it never appeared through an attorney. The day of the trial, BPM moved for a continuance in order to secure counsel, but the trial court specifically found that any delay in the proceedings would be prejudicial to Ladson, and it believed BPM's request for a continuance was motivated by procrastination, bad planning, and bad faith.

■■ [¶ 23.] "A default judgment is an extreme remedy and should only be granted when 'the adversary process has been halted because of an essentially unresponsive party.'" *Pepsi Americas*, 2003 SD 3, ¶ 12, 656 N.W.2d at 327. We have also stated that "[d]efault judgments are not favored in the courts since their effect is to prevent a trial on the merits." *Id.* (citing *Colton Lumber Co. v. Siemonsma*, 2002 SD 116, ¶ 9, 651 N.W.2d 871, 874) (citation omitted). The decision to enter a default judgment, however, "rests with the sound discretion of the trial court and we will not disturb the trial court's decision absent an abuse of that discretion." *Id.* ¶ 11.

■ [¶ 24.] "[A]n individual who is not a licensed attorney may not appear pro se to represent a corporation of which he is a director, officer or shareholder." *Wold Family Farms, Inc. v. Heartland Organic Foods, Inc.*, 2003 SD 45, ¶ 27, 661 N.W.2d 719, 726 n. 4 (citing *Rosebud Fed. Cr. Union v. Mathis Implement*, 515 N.W.2d 241, 244 (S.D.1994) (Miller, C.J. concurring specially)). In this case, Patten filed BPM's answer and counterclaim on behalf of the corporation as its manager. On at least two occasions, the trial court notified Patten that BPM must appear through an attorney and that because it had failed to do so, it was technically in default. Again, at a pre-trial conference one week before the trial, the trial court explained to Patten that she could not represent BPM. Despite these repeated notices, Patten alone showed up at trial and no attorney ever appeared on behalf of BPM.

■ [¶ 25.] BPM was served with Ladson's complaint and summons on March 14, 2003. A trial before the court was held on August 4, 2003. During this time, the trial court repeatedly told Patten that BPM needed to appear through counsel. We believe BPM had ample time and notice in order to obtain counsel to appear on its behalf. "The trial court's discretion is to be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice." *Pepsi Americas*, 2003 SD 3, ¶ 11, 656 N.W.2d at 327. Given the record before us, we cannot say the trial court abused its discretion in holding BPM in default.

[¶ 26.] Affirmed.

[¶ 27.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.