Anne TOMKINS, Plaintiff,

v.

VILLAGE OF TINLEY PARK, Michael Soraghan, Sandra Soraghan, Dean W. Hanson and the Metropolitan Sanitary District of Greater Chicago, Defendants.

No. 81 C 4258.

United States District Court, N.D. Illinois, E.D.

April 26, 1983.

Lonny Ben Ogus, Chicago, Ill., Greg McHugh, Cook County Legal Ass. Foundation, River Forest, Ill., for plaintiff.

Allen S. Lavin, Chris Averkiou, Mary E. Bennett, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Anne Tomkins brings this action under 42 U.S.C. §§ 1983, 1985 and 1986 against the Village of Tinley Park ("Village"), the Metropolitan Sanitary District of Greater Chicago ("Sanitary District"), and three individuals, Michael Soraghan, Sandra Soraghan, and Dean Hanson, to redress alleged violations of her Fifth and Fourteenth Amendment rights. Additionally, plaintiff alleges a count of trespass under Illinois tort law. The Village and the individual defendants have moved to dismiss Counts I, III and IV for failure to state a claim upon which relief may be granted, and Count II for lack of subject matter jurisdiction. For the reasons stated below, Counts III and IV are dismissed, but the motion to dismiss Counts I and II is denied.

Accepting plaintiff's allegations as true for purposes of these motions, *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978), the following facts emerge as the basis of this lawsuit. Plaintiff and the Soraghans are neighbors in the Village. When originally installed by the Village, the sewer system under their properties was improperly constructed. Consequently, during the summer of 1980, the Soraghans' building service sewer, which connects the Soraghans' residential sewer to the Village's sewer, became obstructed. Numerous efforts to clear this sewer proved unsuccessful. The condition progressively worsened and by the early part of November 1980 the Soraghans were unable to use their toilet and laundry facilities. To remedy this undesirable situation, on November 18 or 19, 1980, the individual defendants entered upon plaintiff's property and installed a connecting pipe between the Soraghans' residential sewer and plaintiff's building service sewer. This connection was made with the prior knowledge and consent of the Village, but without plaintiff's permission. Furthermore, the Village dispatched police officers to watch and protect the individual defendant's activities. Moreover, plaintiff asserts that the Village has the custom or policy of approving and condoning trespasses on private property when sewer problems exist, and permitting the installation of sewers without regard to the property rights of individual homeowners.

Claiming that defendants' activities caused her numerous injuries, including depreciation of her property, damage to her fence and landscaping, and an inability to sell her property, plaintiff alleges in Count I that defendants deprived her of property for public use without just compensation. In Count II plaintiff avers that defendants' activities constitute a trespass under state law upon her property. Count III contains allegations that defendants conspired to deprive plaintiff of her constitutional rights. Finally, Count IV charges the Village and Sanitary District with neglecting to prevent the conspiracy alleged in Count III.

## COUNT I

■ Plaintiff brings this count pursuant to 42 U.S.C. § 1983, alleging a violation of her Fourteenth Amendment right prohibiting taking without just compensation. Initially, then, it must be determined whether plaintiff's allegations state a claim under 42 U.S.C. § 1983.[1] To state a claim under § 1983 plaintiff must allege both that defendants acted under color of state law and that they deprived her of a right secured by the Constitution or laws of the United States. *Gomez v. Taylor,* 446 U.S. 635, 100

---

1. Section 1983 imposes civil liability only upon persons who "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." 42 U.S.C. § 1983.

S.Ct. 1920, 64 L.Ed.2d 572 (1980). The individual defendants contend that neither prong of this test is satisfied; the Village argues that even if state action exists plaintiff was not deprived of any constitutional right.

■ Generally, private parties do not act under color of state law. In certain situations, however, private parties expose themselves to liability under § 1983. For example, private individuals assisting a state agency in carrying out an unlawful action, or engaging in prohibited conduct with non-immune state officials, act under color of state law for § 1983 purposes. *Grow v. Fisher,* 523 F.2d 875 (7th Cir.1975); *Holmes v. Silver Cross Hospital of Joliet,* 340 .F.Supp. 125 (N.D.Ill.1972). Were it otherwise, state officials could insulate themselves from § 1983 suits by entrusting certain duties to private individuals. *See Braden v. University of Pittsburgh,* 477 F.2d 1, 7 (3d Cir.1973).

■ Determining precisely what conduct by a private party constitutes "state action" has proven to be a difficult task. The Supreme Court has repeatedly recognized that private individuals who wilfully participate in joint activity with the state, or its agents, act under color of state law. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970); *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966). The degree of joint activity must sufficiently demonstrate "some nexus between the conduct complained of and the state, state official or some state entity." *Musso v. Suriano,* 586 F.2d 59, 64 (7th Cir.1978). *See also Sparkman v. McFarlin,* 601 F.2d 261 (7th Cir.1979) (en banc).

This required nexus may be demonstrated in any of three ways. First, plaintiff may show that the state affirmatively supported, encouraged or compelled the action-able conduct of the private party. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Musso v. Suriano, supra.* Second, plaintiff may claim that the private individual was performing a function traditionally and exclusively performed by the sovereign. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Anastasia v. Cosmopolitan National Bank of Chicago,* 527 F.2d 150 (7th Cir.1975). Finally, plaintiff may allege that the private actor, as a result of his conduct, became an instrumentality of state power. *Burton v. Wilmington Park Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Sparkman v. McFarlin, supra* (Sprecher, J., concurring).

■ The degree of joint activity between the Village and the individual defendants sufficiently establishes a nexus between them for the purposes of surviving a motion to dismiss. The facts pleaded sufficiently allege that the Village "affirmatively supported" the individual defendants' conduct, and this affirmative support was significant "measured either by its contribution to the effectiveness of defendant's conduct, or perhaps by the defiance of conflicting national policy." *Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638, 656 (7th Cir.1972) (en banc), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973). Furthermore, the private parties derived "aid, comfort, or incentive" from the affirmative support. *Id.* at 655. But for the Village's consent and police supervision, it can be reasonably contended that the individual defendants would not have entered upon plaintiff's property and made their sewer connection.[2] *See United States v. Classic,* 313 U.S. 299, 325–26, 61 S.Ct. 1031, 1042–1043, 85 L.Ed. 1368 (1941). Accordingly, this court finds the complaint sufficiently alleges that "some nexus" existed between the individual defendant's sewer connection and the Village, and that the "private" conduct of the Soraghans and

---

**2.** Additionally, the Supreme Court has recently noted that "[j]oint action with a state official to accomplish a prejudgment deprivation of a constitutionally-protected property interest will support a § 1983 claim against a private party." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 927 n. 6, 102 S.Ct. 2744, 2749 n. 6, 73 L. Ed.2d 482 (1982).

Hanson was, therefore, action under color of state law for purposes of § 1983.[3]

▮ Simply because the sewer connection was made under color of state law, however, does not end our inquiry as to whether plaintiff has successfully stated a claim under § 1983. It must additionally be alleged that defendants' conduct deprived plaintiff of a right secured by the Constitution or laws of the United States. *See Baker ·v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Plaintiff contends that in making the sewer connection the defendants violated her right to equal protection of the laws and deprived her of property for public use without just compensation. Essentially, plaintiff's claim asserts a violation of her property rights guaranteed by the Fifth and Fourteenth Amendments. This court must, therefore, decide whether the sewer connection amounted to a taking of property under the Fifth Amendment.[4]

The Supreme Court has recognized that: [t]he question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty. While this Court has recognized that the "Fifth Amendment's guarantee ... [is] designed to bar Government from forcing some people alone to bear public burdens, which in all fairness and justice, should be borne by the public as a whole," this Court, quite simply, has been unable to determine any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely "upon the particular circumstances [in that] case."

*Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 123–24, 98 S.Ct. 2646, 2658–59, 57 L.Ed.2d 631 (1978) (citations omitted).[5] Furthermore, the Court has declared that it is "not essential that the entire community nor even any con-

---

**3.** This court recognizes that mere allegations of joint conduct between private individuals and state officials, absent factual averments, are insufficient to defeat a motion to dismiss. *Tarkowski v. Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980). However, by claiming that the Village consented to the sewer connection and dispatched police officers to supervise it, plaintiff has successfully made factual averments of joint activity necessary to survive a motion to dismiss. It should be noted that these allegations may be insufficient for plaintiff to prevail on a motion for summary judgment or at trial. For example, it may be necessary for plaintiff to demonstrate that the Village not only consented to a sewer connection but knowingly consented to the individual defendants connecting the sewer *over plaintiff's property.* Similarly, plaintiff may also be required to show that the Village's purpose for dispatching police officers was to aid the individual defendants in making the sewer connection.

**4.** The "taking" clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Chicago B. & Q.R.R. v. City of Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979 (1897).

**5.** A Fifth Amendment "taking" does not require actual physical possession of a person's property. *Aris Gloves, Inc. v. United States,* 190 Ct.Cl. 367, 420 F.2d 1386, 1391 (Ct.Cl. 1970). Takings can occur when government action deprives an owner of the use of his property, *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), directly interferes with property rights, *R.J. Widen Co. v. United States,* 174 Ct.Cl. 1020, 357 F.2d 988, 993 (Ct.Cl.1966), or makes it possible for someone else to obtain the use or benefit of another person's property. *Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565, 570 (Ct.Cl.1965). State courts split on the question of what amounts to a "taking". Some, including those in Illinois, hold that property is "taken" whenever there is "an actual physical invasion of the tangible property." *Horn v. City of Chicago,* 403 Ill. 549, 554, 87 N.E.2d 642, 646 (1949), *cert. denied,* 338 U.S. 940, 70 S.Ct. 429, 94 L.Ed. 580 (1950). Others define takings as any substantial interference with private property which destroys or impairs one's free use and enjoyment of the property or one's interest in the property. *See e.g., State v. Stefaniak,* 250 Ind. 631, 238 N.E.2d 451 (1968). Either way, the plaintiff's allegations in the instant case state a claim under the Fifth Amendment's "taking" clause.

siderable portion, should directly enjoy or participate in an improvement in order to constitute a public use." *Rindge Co. v. Los Angeles County,* 262 U.S. 700, 707, 43 S.Ct. 689, 692, 67 L.Ed. 1186 (1923). Thus, the mere fact that the sewer connection primarily benefits only the Soraghans does not by itself preclude plaintiff's claim that her property was "taken" for public use.

Although this court's extensive research has been unable to discover any federal cases discussing whether a sewer connection amounts to a taking, several state courts have considered this matter. For example, the Massachusetts Supreme Judicial Court, when faced with a controversy virtually identical to the instant case, held "[t]hat the laying out of sewers is a *public purpose* which will justify the *taking* of private property by eminent domain can hardly be doubted." *Machado v. Board of Public Works of Arlington,* 321 Mass. 101, 104, 71 N.E.2d 886, 888 (1947) (emphasis added).[6] Furthermore, the court noted that the taking of an easement in private lands, by eminent domain, to afford one property owner access to a sewer main, was for a "public purpose" despite appearing to solely benefit the private owner. *Id.* Similarly, in *Gunn v. City of Versailles,* 330 S.W.2d 257 (Mo.Ct.App.1959), a city made a sewer connection to a landowner's private sewer without his permission and without any compensation. The court there found that in making the connection the city did not merely do consequential damage to the landowner's property but rather appropriated such property and thus the sewer connection amounted to a "taking" of property without just compensation, in violation of the Fifth Amendment. In several other states courts have recognized that under the Fifth Amendment the taking of an easement in private property for construction and maintenance of sewer systems re-

quires an award of just compensation. *See Sanitary District of Chicago v. Commonwealth Edison Co.,* 357 Ill. 255, 192 N.E. 248 (1934); *City of Charlotte v. Heath,* 226 N.C. 750, 40 S.E.2d 600 (1946); *Valevais v. City of New Bern,* 10 N.C.App. 215, 178 S.E.2d 109 (1970); *Parsons v. City of Sioux Falls,* 65 S.D. 145, 272 N.W. 288 (1937).

█ Moreover, the Supreme Court recently held that "constitutional protection for the rights of private parties cannot be made to depend on the size of the area permanently occupied." *Loretto v. Teleprompter,* —— U.S. ——, 102 S.Ct. 3164, 3177, 73 L.Ed.2d 868 (1982). Thus, a taking of property, no matter how small, is nonetheless a "taking" for Fifth Amendment purposes. Although defendants' sewer connection may occupy only a small portion of plaintiff's property, in a constitutional sense it is no less a taking than would be a highway constructed over her entire property. Accordingly, this court finds that plaintiff's complaint sufficiently alleges a taking for public purposes, without just compensation, in violation of the Fourteenth Amendment.

The final question to be addressed is whether this alleged violation can be brought under § 1983. Prior to 1972 there was considerable confusion over whether deprivations of property were cognizable under § 1983. Many federal courts recognized § 1983 claims for *personal* rights, but not for *property* rights. In *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, *rehearing denied,* 406 U.S. 911, 92 S.Ct. 1611, 31 L.Ed.2d 822 (1972), the Supreme Court ended this confusion by expressly rejecting any "distinction between personal liberties and proprietary rights as a guide to the contours of" § 1983.[7] *Id.* 405 U.S. at 542, 92 S.Ct. at 1117.

---

6. In *Machado,* a town granted an individual suffering from cesspool problems an easement over the plaintiff's property for purposes of making a sewer connection. Machado claimed that the town's actions were an invalid exercise of eminent domain because his property had been taken for private benefit and not for public use.

7. The *Lynch* Court noted that:
   the Congress that enacted the predecessor of § 1983 . . . seems clearly to have intended to provide a federal judicial forum for the redress of wrongful deprivations of property by persons acting under color of state law . . . . [T]he dichotomy between personal liberties and property rights is a false one. Property

It is clear, however, that not *all* state deprivations of property are cognizable under § 1983. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court considered a prisoner's § 1983 claim against prison officials for negligently losing his hobby kit. The Court found the two essential elements of a § 1983 action fulfilled: the prisoner had been deprived of his property under color of state law. However, the *Parratt* Court held that simply fulfilling these elements did not establish a violation of the Fourteenth Amendment since that amendment does not protect against *all* deprivations of property by the state but only against those made without due process of law. Further, the Court determined that where only property rights are involved the mere postponement of judicial inquiry is not a denial of due process if an adequate opportunity exists for the ultimate judicial determination of liability.[8] In other words, although some kind of hearing is constitutionally required, this hearing need not always be provided *prior* to the deprivation of property. *Id.* at 540, 101 S.Ct. at 1915. Thus, the mere fact that plaintiff's property was taken without a pre-deprivation hearing does not necessarily establish a § 1983 cause of action.

From plaintiff's complaint, however, it does not appear that she is alleging solely a deprivation of her property without *procedural* due process. Rather, she seems to claim the violation of a *substantive* constitutional guarantee: the right not to have her property seized with the active participation of the government and without just compensation. Recently, in *Wolf-Lillie v.*

Sonquist, 699 F.2d 864 (7th Cir.1983), the Seventh Circuit held *Parratt* inapplicable "to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process. Federal and state courts in effect have concurrent jurisdiction over torts based on substantive constitutional guarantees." *Id.* at 872 (footnote omitted). Under this reading of *Parratt,* plaintiff's claim is cognizable under § 1983 because it alleges a violation of her *substantive* constitutional right not to have her property seized without just compensation.

Additionally, plaintiff asserts that defendants *intentionally* deprived her of property. Whether the reach of the *Parratt* doctrine encompasses intentional as well as negligent deprivations of property is a question that has received considerable academic and judicial attention. See *e.g., Begg v. Moffitt,* 555 F.Supp. 1344 (N.D.Ill. 1983). Several lower courts have construed *Parratt* to apply only to intentional property deprivations. *See e.g., Sheppard v. Moore,* 514 F.Supp. 1372 (M.D.N.C.1981). The Seventh Circuit, however, appears to limit *Parratt* to negligent property deprivations. See *Madyun v. Thompson,* 657 F.2d 868 (7th Cir.1981) (recognizing that allegations of intentional property deprivations state a claim under § 1983, while allegations of negligent property deprivations fail to do so under *Parratt* ). *See also Bonner v. Coughlin,* 657 F.2d 931, 933 n. 3 (7th Cir. 1981) (dicta); *Dutton v. City of Crest Hill,* 547 F.Supp. 38, 40–41 n. 1, 43 (N.D.Ill.1982) *McCowen v. City of Evanston,* 534 F.Supp. 243, 249 (N.D.Ill.1982). Thus, by asserting

does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "personal" right whether the property in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized .... Congress recognized these rights in 1871 when it enacted the predecessor of § 1983 ....

405 U.S. at 543, 552, 92 S.Ct. at 1117, 1122.

8. The *Parratt* Court recognized that:

either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of due process.

451 U.S. at 539, 101 S.Ct. at 1914–15.

that defendants *intentionally* deprived her of a *substantive* constitutional right, plaintiff states a § 1983 claim under either Seventh Circuit reading of *Parratt.*

▮▮▮▮ Finally, plaintiff alleges an equal protection violation under Count I. Plaintiff's failure to allege that similarly situated persons receive dissimilar treatment under the law, *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1971), however, is fatal to her equal protection claim. Accordingly, we find that Count I states a claim under § 1983 for violation of the Fourteenth Amendment's guarantee of just compensation, but fails to adequately allege a violation of that amendment's equal protection clause. This court must, therefore, deny defendants' motions to dismiss Count I, except as to the equal protection allegations.[9]

## COUNT II

▮▮▮▮ In Count II plaintiff alleges that defendants' conduct amounted to a trespass upon her property. This state claim may be entertained only if pendent jurisdiction exists between it and the federal claim. In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218

(1966), the Supreme Court outlined three requirements for pendent jurisdiction:

> (1) [t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court (citation omitted); (2) [t]he state and federal claims derive from a common nucleus of operative fact ...; (3) considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding....

*Id.* 383 U.S. at 725, 86 S.Ct. at 1138.

▮▮▮▮ It is difficult to imagine a clearer example of pendent jurisdiction than the instant case. The § 1983 and trespass claims are comprised entirely of the same facts, and would ordinarily be brought in a single judicial proceeding. Therefore, this court finds that pendent jurisdiction exists between Counts I and II and, accordingly, denies defendants' motions to dismiss Count II.

## COUNT III

▮▮▮▮ Plaintiff's allegation in Count III, that defendants conspired to deprive her of constitutional rights, attempts to state a claim under § 1985(3).[10] To determine

---

**9.** It should be noted that municipalities and other local governmental units are included among those "persons" to whom § 1983 applies, *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), *overruling Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and have no good faith immunity from liability under § 1983. *Owen v. City of Independence,* Mo., 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). By alleging that the Village has the policy or custom of approving and condoning sewer connections without regard to the property rights of affected homeowners, plaintiff has sufficiently stated a § 1983 claim against the Village. *See Monell, supra,* 436 U.S. at 690–91, 98 S.Ct. at 2035–2036.

**10.** Although the complaint is unclear, in her memorandum plaintiff seems to contend that the conspiracy claim arises under § 1983 as well as § 1985. If so, this court fails to see how these allegations vary from Count I and, accordingly, examines the conspiracy claim under § 1985. 42 U.S.C. § 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the high-

way or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or de-

whether plaintiff's effort is successful this court looks to *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In that case the Supreme Court declared that to state a claim under § 1985(3):

> a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." [11]

*Browder v. Tipton,* 630 F.2d 1149, 1151 (6th Cir.1980) (quoting *Griffin,* 403 U.S. at 102–03, 91 S.Ct. at 1798–99). The *Griffin* Court clarified the second requirement by stating:

> [t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some *racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.* The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by law to all.

403 U.S. at 102, 91 S.Ct. at 1798 (emphasis supplied).

Because *Griffin* concerned racially-motivated discrimination, the Supreme Court did not decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable" under § 1985(3). *Griffin,* 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9; *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327, 332–33 (9th Cir.1979). The Seventh Circuit, however, has recognized that a showing of certain non-racially motivated discrimination will satisfy this requirement of § 1985(3). *See Uptown Peoples Community Health Services Board of Directors v. Board of Commissioners of Cook County,* 647 F.2d 727, 733 (7th Cir.1981); *Askew v. Bloemker,* 548 F.2d 673, 678 (7th Cir.1976). Whether the instant case involves non-racially motivated discrimination sufficient to invoke § 1985(3), requires consideration of the underlying principle of the statutory provision that "some groups require and warrant special federal assistance in protecting their civil rights." *DeSantis,* 608 F.2d at 333. Further, this court must examine plaintiff's complaint in light of *Griffin's* pleading requirements to determine whether it successfully states a claim under § 1985(3).

The pleading requirements announced in *Griffin* evince "a general concern that actions brought under Section 1985 must be carefully delineated in accordance with the statutory purposes of the Act to avoid the unintended creation of a general federal tort law." *Kimble v. McDuffy,* 648 F.2d 340, 346 (5th Cir.1981). Accordingly, the Seventh Circuit has consistently held that a complaint which does not allege a conspiracy motivated by class-based invidious discrimination fails to state a claim under § 1985(3). *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd* ─── U.S. ───, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Uptown Peoples, supra* at 733; *Elbert v. Board of Education of Lanark Community Unit,* 630 F.2d 509, 514 (7th Cir.1980), *cert. denied,* 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538, 543 (7th Cir.1975). *See also Ekergren v. City of Chicago,* 538 F.Supp. 770, 771. (N.D.Ill.1982); *Osborne v. Adam,* 535 F.Supp. 1351, 1353 (N.D.Ill.1982). Thus, plaintiff's failure to allege in her complaint a class-based invidious discriminatory ani-

---

prived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**11.** Some courts have added as a fifth requirement that the conspirators' conduct must be unlawful independent of the § 1985(3) violation. *See Scott v. Moore,* 640 F.2d 708, 716 (5th Cir.1981); *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir.1977) (en banc).

mus behind defendant's conduct justifies a dismissal of her § 1985(3) claim.[12] Accordingly, this court grants defendants' motions to dismiss Count III.

## COUNT IV

 In Count IV plaintiff attempts to state a claim under § 1986, alleging that the Village and the Sanitary District neglected to prevent the conspiracy charged in Count III.

Section 1986, which provides that every person having knowledge that certain wrongs conspired to be done or about to be done, and having the power to prevent their commission neglects or refuses to do so, shall be liable to the party injured, is *totally dependent upon § 1985 for vitality. No claim may lie under § 1986 unless a valid claim setting forth a conspiracy to deprive a person of his civil rights has first been established under section 1985.* Doyle v. Unicare Health Services, Inc., Aurora Center, 399 F.Supp. 69, 75–76 (N.D.Ill. 1975) (emphasis supplied). *See also Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir.1980); *Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir.1975). Since this court finds that plaintiff failed to state a claim under § 1985(3), we are compelled to grant the Village's motion to dismiss Count IV.

In summary, plaintiff's complaint sufficiently states a claim under § 1983 and, therefore, pendent jurisdiction exists over her state claim of trespass. Additionally, this court holds that plaintiff's complaint fails to state a claim under §§ 1985(3) and 1986. Accordingly, defendants' motions to dismiss Counts I and II are denied, while the motions to dismiss Counts III and IV are granted. Finally, although the Sani-

tary District has not moved to dismiss, the only possible claims which apply against it are contained in Count IV, and thus this court, *sua sponte,* dismisses the Sanitary District from this lawsuit.

---

**12.** While, in her memoranda, plaintiff suggests discrimination against female homeowners, no such conspiracy is alleged, and the class suggested is questionable as a basis for § 1985 jurisdiction.

*See Askew v. Bloemker,* 548 F.2d 673 (7th Cir.1976) (homeowners raided by federal drug enforcement agents are not a class protected by § 1985(3)). *But see Life Ins. Co. of N. Am. v. Reichardt,* 591 F.2d 499 (9th Cir.1979) (women purchasers of disability insurance are a class protected by § 1985(3)). For a list of several protected and unprotected classes under § 1985(3) *see Browder v. Tipton,* 630 F.2d 1149, 1152 and n. 7 (6th Cir.1980). The court notes that plaintiff has already alleged a Village practice affecting individual homeowners generally. Her memoranda suggestion apparently is that the practice is confined to female homeowners. If that is her claim, Count I should be amended accordingly.